IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Michael Magnuson and Constance Magnuson, Linda Mack, Adrianne Shaw, Mike Flanigan, Janean Monroe, Michael Fredrick, John Rich, Byron Smith, Kristine Breuker, Thomas James, Paul Fazio, Pamela Fazio, Mike Freed and Jane Freed,<br><br>      Plaintiffs,<br><br>   v.<br><br>Window Rock Residential Recovery Fund, L.P., Window Rock Capital Partner GP, LLC, Window Rock Manager, LLC, Patrick Cardon, Cordell Rogers, Integrity Bank & Trust, Integrity Wealth Management, and Eric Davis,<br><br>      Defendants. | Case No. 22-cv-1010<br><br>Judge Manish S. Shah<br><br>Magistrate Heather K. McShain |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(2)**

Dated:  March 2, 2023

Counsel for Plaintiffs

Darrell J. Graham
Peter S. Roeser | Ashley J. Roeser
**ROESER TANNER & GRAHAM LLC**
2 North Riverside Plaza, Ste. 1850
Chicago, Illinois 60606
312.621.0301
dgraham@rtglaw.com

## INTRODUCTION

Plaintiffs filed a seven count Complaint ("Cplt.") alleging violation of the Federal Securities Laws (sections 10(b) and 20(a) of the Exchange Act) and various pendent state law claims arising out of the same nucleus of facts. Plaintiffs brought their claims against two groups of defendants: the "Integrity Defendants," and the "Window Rock Defendants."[1] The Integrity Defendants answered the Complaint. The Window Rock Defendants moved to dismiss under both Fed. R. Civ. P. 12(b)(2) and 12(b)(6). This response addresses the Window Rock Defendants' personal jurisdiction motion made pursuant to Fed. R. Civ. P. 12(b)(2).

## SUMMARY OF THE ARGUMENT

The Window Rock Defendants' motion is fatally flawed and must be denied because they rely on the wrong legal standard for establishing personal jurisdiction. This is a securities action, and personal jurisdiction is established pursuant to 15 U.S.C. §78aa, which provides for nation-wide service of process. The Defendants incorrectly base their entire jurisdictional argument on the assumption that the Illinois long-arm statue applies in federal securities fraud cases with pendent state claims. But as courts have repeatedly made clear: "the Illinois long-arm statute has absolutely no relevance to [a federal securities law case]" like the one here. *Stuart-James Co. v. Rossini*, 736 F. Supp. 800, 803 (N.D. Ill. 1990). Because Section 78aa of the Securities Exchange Act authorizes nation-wide service of process, this Court has personal jurisdiction over the Defendants so long as Defendants have minimum contacts with the United States, not with Illinois. The Window Rock Defendants admit that they do business in the United States; and the allegations plainly assert they marketed the Fund as a security in the United States. Accordingly,

---

[1] The "Window Rock Defendants" are Patrick Cardon ("Cardon"), Cordell Rogers ("Rogers"), Window Rock Residential Recovery Fund, L.P., Window Rock Capital Partner GP, LLC, Window Rock Manager, LLC. The "Integrity Defendants" are Integrity Bank & Trust, Integrity Wealth Management, and Eric Davis.

the Court has personal jurisdiction over all the Window Rock Defendants. *See* Argument § I at 5-7, below.

Alternatively, even if Section 78aa did not apply, the Window Rock Defendants have sufficient contacts with Illinois to meet the minimum contacts test for specific personal jurisdiction. *See* Argument II-B at 7-13.

## FACTUAL BACKGROUND

Plaintiffs invested in the Window Rock Residential Recovery Fund C (the "Fund"), which was one of eight funds controlled by Window Rock Residential Recovery Fund, L.P., and managed by Defendant Window Rock Manager LLC, and supervised by Defendant Window Rock Capital Partner GP. Cplt. ¶ 1. Each of the Window Rock Defendant entities were created under Delaware law and do business in the United States and Illinois. *See Id.* at ¶¶ 25-27. Defendant Patrick Cardon is a citizen of the United States, resides in Arizona and was a managing director of the Fund and an officer of various Window Rock entities. *Id.* at ¶ 28. Defendant Cordell Rogers is likewise a citizen of the United States, resides in Arizona and served as the Chief Financial Officer of at least one of the Window Rock entities. *Id.* at ¶ 29. While there are more facts to the story, the above facts alone are sufficient to establish personal jurisdiction under Section 78aa.

All the Plaintiffs invested their funds through their financial advisor Thomas Hines ("Hines") (mistakenly referred to as Michael Hines in Defendants' Motion). *Id*. at ¶¶ 2, 10.[2] Hines is an Illinois resident and operates his business out of Cook County, Illinois. Cplt. ¶ 10;

---

[2] Exhibit 1, hereto is the Declaration of Thomas Hines ("Hines Dec."), which is being submitted in response to the Declarations of Patrick Cardon and Cordell Rogers (Exhibits B and C respectively to the Window Rock Defendants' Motion and referred to as "Cardon Dec." and "Rogers Dec."). *See Stuart-James Co. v. Rossini*, 736 F. Supp. 800, 803 (N.D. Ill. 1990) ("Although movants are free to produce whatever evidence they desire [in support of the Rule 12(b)(2) motion], any conflicts of the evidence concerning this motion must be resolved in favor of the plaintiff.")

2

Hines Dec. ¶¶ 2-3. Six of the Plaintiffs resided in Illinois at the time they invested in the Fund. *Id.* at ¶ 10.

The Window Rock Defendants marketed the Fund to Hines and Plaintiffs in the United States, and more specifically in Illinois. Cplt ¶¶ 2, 10; Hines Dec. ¶ 4-9. The Defendants used their co-sponsor of the Fund, Integrity Bank and Trust (one of the Integrity Defendants) and Eric Davis (another Integrity Defendant) to help them promote the Fund to Hines and Plaintiffs in Illinois. Cplt. ¶ 10; Hines Dec. ¶ 8. The Window Rock Defendants drafted and supplied critical information to Integrity, including the PowerPoint presentation (referred to in the Complaint at ¶¶ 50-53), knowing it would be disclosed to Hines and Plaintiffs for the purpose of promoting the Fund. Cplt. ¶ 50; Hines Dec. ¶ 9.

On at least one occasion Defendant Cardon (managing director of the Fund) traveled to Illinois to meet with Hines at Hines's office at Good Harbor Financial in Chicago (55 N. Wacker). Hines Dec. ¶ 6. During the meeting Cardon promoted investment in the Fund; Cardon further touted both his and the Window Rock Defendants' experience in managing residential recovery funds and his success in the other funds the Window Rock Defendants managed. *See* Cplt. ¶¶ 51-53; Hines Dec. ¶ 7. As alleged in the Complaint, the promotion of the Fund based on the success of prior funds was misleading because the prior funds were not successful. Cplt. ¶¶ 51-53.

In addition to marketing the Fund to Hines and Plaintiffs in Illinois, the Window Rock Defendants prepared "Quarterly Updates" that they transmitted to Hines in Illinois through their co-sponsor, Integrity Bank and Trust, and Eric Davis. *Id.* at ¶¶ 54-57; Hines Dec. ¶ 11, and Ex. A (an example of a Quarterly Update), thereto. Once the Quarterly Updates were distributed, Hines frequently met in Chicago or talked on the phone with Jeff Pettiford to discuss those reports and

3

the performance of the Fund. Cplt. ¶¶ 10, 120; Hines Dec. ¶ 12.[3] Pettiford was an officer and partner in one or more of the Window Rock entities and resided in Illinois. Pettiford was also the person responsible for reviewing the Quarterly Updates with Hines. *Id*. ¶¶ 10, 67-69. The Quarterly Updates falsely represented that that the Fund was performing well, and that Plaintiffs' assets were secure. *Id*. ¶ 2. Pettiford consistently parroted this false and misleading narrative about the performance of the Fund to Hines. *Id.* ¶ 67 Hines Dec. ¶ 13.

At no point did the Quarterly Updates or Pettiford indicate that the Fund was performing poorly and was on the verge of failure. Indeed, the Quarterly Updates indicated there was $7.3 million of fund assets under management and that there was a "margin of safety," which Window Rock defined as "the difference between the basis of the portfolio loans and the value of real estate collateral," of $4.8 million. Cplt. ¶ 2. However, seven months after the last Quarterly Update, in a conference call, Window Rock informed investors that all assets had been lost. *Id*. During that call, Cardon admitted that Window Rock's "written communications were not clearly communicating what was really going on in the [F]und." Cplt. ¶¶ 67-69. While an understatement, it is still quite an admission.

The Window Rock Defendants misled Hines and his investors in Illinois about the past performance of funds the Window Rock Defendants managed, and grossly misrepresented the financial condition of the Fund during its term through the Quarterly Updates and Pettiford.

---

[3] An example of a quarterly update sent to Hines in Illinois is attached as Ex. A to Hines's Declaration.

**ARGUMENT**

I. **This Court Has Personal Jurisdiction over the Window Rock Defendants Pursuant to 15 U.S.C. § 78aa**

The Window Rock Defendants rely on the wrong standard for personal jurisdiction under the Securities Exchange Act, which is the basis for the claims against the Window Rock Defendants under Counts I and II of the Complaint. As set forth in ¶¶ 6-7, 9 of the Complaint, plaintiffs allege jurisdiction pursuant to 15 U.S.C. §78aa. That section of the Act provides for nation-wide service of process:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C.A. § 78aa (West)

The law is clear that "[f]ederal statutes that authorize nationwide service of process provide personal jurisdiction in *any* United States District Court, so long as the defendant has minimum contacts with the *United States*." *J.A.G.P. through Lopez v. Aerolineas Damojh, S.A. de C.V.*, 1:19-CV-02552, 2021 WL 5998511, at *2 (N.D. Ill. Dec. 19, 2021) (emphasis in original). Thus, the test under the Securities Act is not whether "there [are] minimum contacts with the state in which the federal court hearing the case sits, as it would be when testing the constitutionality of the assertion of personal jurisdiction under a state long-arm provision" —as Defendants argue exclusively and throughout its motion—"but, rather, that there be minimum contacts with the United States." *Stuart-James Co. v. Rossini*, 736 F. Supp. 800, 803 (N.D. Ill. 1990); *see also Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir. 1979) (holding that a resident and citizen of the United States had sufficient contacts with the United states "to support the

5

fairness of the exercise of jurisdiction over him by a United States court"); *United States Sec. & Exch. Comm'n v. Skerry*, No. 1:17 CV 415, 2018 WL 1083816, at *3 (N.D. Ind. Feb. 26, 2018) ("When a statute provides for nationwide service of process, the minimum contacts necessary to satisfy constitutional due process requirements are analyzed based on the defendant's contacts with the United States, not a particular state or district"). *Cf.*, *Bd. Of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir. 2000) (collecting cases, under different federal statutes allowing for nationwide service of process where necessary contacts for personal jurisdiction are to the United States and not to state where case was filed).[4]

The Window Rock Defendants do not, nor could they, contend that they do not have sufficient contacts with the United States for the Court to have jurisdiction over them. *See J.A.G.P.*, 2021 WL 5998511 at *3 ("mere residence in the United States" provided the necessary minimum contacts to support personal jurisdiction). The declarations of the two officers of the various Window Rock entities, Cardon and Rogers, admit that the Window Rock Defendants are citizens and residents of the United States and that the Window Rock Defendants marketed their security throughout the United States. *See* Motion Ex. B Cardon Dec., ¶¶ 3, 11, 14, 16-18; Ex. C Rogers Dec., ¶¶ 3, 7, 11-14. Thus, personal jurisdiction under 15 U.S.C. §78aa has been established.

Because the Court has jurisdiction over the Window Rock Defendants under the securities laws, the Court also has jurisdiction over Plaintiffs' pendent state law claims. *Stuart-*

---

[4] The Window Rock Defendants' reliance on *Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012) for arguing that Illinois' long-arm statute must apply is wrong because *Felland* did not involve a statute like the Exchange Act, that provided for nationwide service of process. Indeed, *Felland* clearly states that "No federal statute authorizes nationwide service of process *in this case*, so personal jurisdiction is governed by the law of the forum state," *Id*. at 672 (emphasis added).

*James Co.*, 736 F. Supp. at 804 ("having personal jurisdiction over the defendant for purposes of the federal question automatically vests this court with discretionary jurisdiction over the same defendant for purposes of any truly pendent state claims as well"); *Clayton v. Heartland Res., Inc.*, No. 1:08CV-94-M, 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008) (because "state law claims arise out of the same common nucleus of operative fact as the federal securities violations [the court] also had pendent personal jurisdiction over these claims") Here, the federal and state claims all arise out of the same facts.

**II.     The Defendants Have Sufficient Minimum Contacts With Both the United States and Illinois**

In the alternative, Defendants' motion should be denied because Defendants have sufficient contacts with the United States *and* Illinois. As set forth below, the allegations and proofs establish that Defendants intentionally reached into Illinois through their activities, those activities resulted in injury to Illinois citizens in Illinois, and there would be nothing unjust or unfair in subjecting the Defendants to jurisdiction.[5]

***Actions Purposefully Directed at Illinois***. Contrary to Defendants' primary (although misplaced) argument, the Defendants purposefully availed themselves of the privilege of conducting business in Illinois. Plaintiffs agree with the Window Rock Defendants that a defendant availed itself of the privilege of conducting business in Illinois if the conduct was

---

[5] Under the Illinois long-arm statue a court has specific personal jurisdiction over an out-of-state defendant where the defendant established "minimum contacts with the forum state such that he or she "should reasonably anticipate being haled into court there." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010); 735 ILCS 5/2-209(c). "Specific jurisdiction is warranted when a defendant has directed his activities at the forum state, and the cause of action relates to those activities." *RNS Servicing, LLC v. Spirit Constr. Servs., Inc.*, No. 1:17-CV-00108, 2018 WL 3729326, at *4 (N.D. Ill. Aug. 6, 2018). Specific personal jurisdiction exists when: (i) the defendant purposely avails itself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (ii) the alleged injury arises from the defendant's forum-related activities; and (iii) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.*

7

intentional, expressly aimed at the forum state, and was with defendants' knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland v. Clifton*, 682 F.3d 665, 674–75 (7th Cir. 2012) (reversing the district court's decision dismissing this case for lack of personal jurisdiction). Personal jurisdiction does not turn on physical presence; more significant is whether a putative defendants' actions were knowingly and intentionally directed towards Illinois. *Leong v. SAP Am., Inc.*, 901 F. Supp. 2d 1058, 1063 (N.D. Ill. 2012) (personal jurisdiction established over defendant who did not physically travel to Illinois, but made decisions which she knew would affect plaintiff in Illinois and also sent communications to the forum by participating in a teleconference with Illinois resident); *See also, Tamburo v. Dworkin*, 601 F.3d 693, 706 (7th Cir.2010) (same).

Here, each Window Rock Defendant intentionally directed their marketing of the Fund and reporting on the Fund to Hines and investors in Illinois. Window Rock's argument largely ignores the Plaintiffs' allegations and otherwise attempts to unsuccessfully minimize the roles of each Window Rock Defendant.

The Window Rock entities conducted business in Illinois through its agents, Integrity and Cardon. Cplt. ¶ 10.[6] All of the false and misleading information at the heart of this case was directly sent to Hines in Illinois. *Id*.; Hines Dec. ¶¶ 4-13. For example, Integrity, the co-sponsor of the Fund with the Window Rock Defendants, provided Hines with a PowerPoint presentation that contained false and misleading information about the performance of other Window Rock

---

[6] Defendants' argument first tried to diminish the role of the three Window Rock entities, stating Plaintiffs sued the wrong entities. Mot. to Dismiss, pg. 11. This argument is absurd in light of Window Rock's own description of these entities in Window Rock's Private Placement Memorandum – which specifically identified Window Rock Residential Recovery Fund, L.P. as the Fund in which the Plaintiffs could obtain limited partnership interests in, and also outlined the supervisory and controlling roles of Window Rock Capital Partner GP, LLC (the general partner of the Fund) and Window Rock Manager, LLC (the manager of the Fund). Def Mot to Dismiss, Ex. C, pgs. 7, 28-29.

8

funds that was used to promote the Fund.[7] Cplt. ¶ 73; Hines Dec. ¶ 9. Cardon also met with Hines to promote the Fund at Hines's Illinois office. Hines Dec. ¶¶ 6-7. In that meeting, Hines told Cardon he had people from Illinois who would be interested in investing in the Fund. Those people are the Plaintiffs here. Cplt. ¶¶ 10, 13-17.[8] Moreover, the Integrity Defendants regularly communicated with Hines in Illinois, including in-person meetings between Hines and Eric Davis, to report on the Fund. Therefore, the Window Rock entities, as well as the officers, knowingly did business with Illinois residents. Cplt. ¶¶ 2, 10, 53, 64, 67.

Individual Defendants Cardon and Rogers also conducted business in Illinois and were both highly involved in the management and supervision of the Fund. Cardon admits that he was the managing director of Window Rock Capital Partner GP, LLC (the General Partner of the Fund) and Window Rock Manager, LLC (the Manager of the Fund). (Cardon Dec. ¶ 1). Additionally, Cardon does not deny Plaintiffs' description of his role in the Fund, which was to source and qualify investment opportunities as well as manage the due diligence, workout, and marketing of the Fund and properties. Cplt. ¶ 28; Def. Mot to Dismiss Ex. C, p. 26.

Rogers likewise concedes that he was the Chief Financial Officer of the Window Rock entities, but asserts he ceased being the CFO in 2014. (Rogers Dec. ¶ 1). Rogers does not identify what his role in the Window Rock entities was after 2014, but the Window Rock Private Placement Memorandum ("PPM") used to promote the Fund identified Rogers as the CFO of the

---

[7] The Integrity Defendants were co-sponsors of the Fund and worked together with the Window Rock Defendants to sell the fund to investors. Accordingly, the Integrity Defendants were acting as agents for the Window Rock Defendants. The Integrity Defendants indisputably marketed the Fund in Illinois. Cplt. ¶¶ 2,10, 32, 47, 67. There is specific jurisdiction over a principal for the acts within the state of its agent. *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805 (N.D. Ill. 2008).

[8] Although Cardon denies he ever met with anyone to promote the Fund in Illinois, Hines's Declaration creates an issue of fact which cannot be decided on a motion to dismiss. *Felland*, 682 F.3d at 672 (resolve any factual disputes in the affidavits in favor of the plaintiff).

Fund and stated that Rogers managed and conducted audits of Window Rock finances, acted as administrator for all investment vehicles, and was actively involved in investor relations. Def. Mot. to Dismiss, Ex. C (the PPM), Page 26. Therefore, despite Cardon and Rogers attempt to diminish their roles, they were both highly involved in the management and supervision of the Fund.

In order to avoid personal jurisdiction (again under the Illinois long-arm statute rather than §78aa), Window Rock asserted the following facts: (i) no Window Rock entity created or prepared the PowerPoint presentation given to Hines; and (ii) Pettiford was never an employee of the named Window Rock entities, but resided in Chicago and did not market the Fund in Illinois. However, both of these inaccurate facts are simply red herrings.

First, the Window Rock Defendants are trying to distance themselves from this PowerPoint Presentation since it was sent to Hines in Illinois, directed to the Plaintiffs, and contained false information. The Presentation bore the Window Rock logo and address, suggesting that both Cardon and Rogers authorized and knew that it was distributed to investors in the Fund, including in Illinois. *See* Cplt. ¶¶ 50-60.[9] Second, Window Rock's portrayal of Pettiford's involvement in the investment is, at best, misleading. Pettiford, an officer of Window Rock and Illinois resident, met with Hines to promote the Fund, and then continued to meet with Hines and Davis throughout the term of the Fund to discuss and relay its performance. Cplt. ¶¶ 10, 67, 69; Hines Dec. ¶¶ 10-13. Although Cardon now asserts that Pettiford was not an

---

[9] Cardon denies that any Window Rock entity created or prepared the PowerPoint presentation. Motion Ex. B, ¶12. Who prepared or created the presentation is not relevant. If the Window Rock Defendants provided the information for the presentation and the information was misleading, then they are responsible for it. The presentation contained information that only the Window Rock Defendants would know. Significantly, neither Cardon nor Rogers deny that it was misleading or claim that they did not know it was being used to promote the Fund. Additionally, Cardon does not deny that the misleading Quarterly Updates were prepared by the Window Rock Defendants.

10

employee of the Window Rock entities, it is reasonable to infer that Cardon and Rogers authorized Pettiford to meet with Hines on a quarterly basis in Illinois to report on the Funds' performance. Cplt. ¶¶ 10, 67, 69; Hines Dec. ¶¶ 10-13. It is simply not plausible that Pettiford did this on his own without the authorization or knowledge of the Window Rock Defendants, including Cardon and Rogers. Furthermore, Cardon does not deny that Hines met with Pettiford on a quarterly basis (Hines Decs ¶ 12) and that Pettiford advised Davis and Hines that the Fund's return was going to be positive and in the 6-9% range. Cplt. ¶ 67. Additionally, Cardon cannot and does not deny that he told Hines that Pettiford's role was to communicate the financials of the Fund and that Pettiford failed to do so. Cplt. ¶ 69; Hines Dec. ¶ 14.

If there was any doubt about the Window Rock Defendants' involvement it was made clear during the April 2, 2020 call that Cardon and Rogers had with Hines in Illinois where Cardon admitted that the "written communications [directed to Illinois and Hines and his investors] were not clearly communicating what was really going on in the fund," and that if one actually looked at the financial statements, to which neither Hines nor his clients had access, "it is not a pretty picture." Cplt. ¶¶ 67-69. It can at least be inferred from Cardon's statements that the officers of the Fund knew that misleading information was being disseminated to investors in Illinois and that the Fund was failing while, at the same time, the Window Rock and Integrity Defendants were telling everyone that the Fund was performing well.[10]

---

[10] If the plaintiffs' allegations establish a "colorable" showing of personal jurisdiction, the Court has discretion to order limited discovery that would allow plaintiffs to uncover facts that might establish jurisdiction. *In re Testosterone Replacement Therapy Products Liab. Litig. Coordinated Pretrial Proceedings*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,* 230 F.3d 934, 946 (7th Cir.2000)); *see also Gilman Opco LLC v. Lanman Oil Co.,* No. 13–CV–7846, 2014 WL 1284499, at *6 (N.D.Ill. Mar. 28, 2014) ("Courts generally will grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue").

These actions of the Window Rock Defendants reflect a clear intent to conduct business in Illinois. *Cafe Real Estate LLC v. VSP N. Am. LLC*, 262 F. Supp. 3d 637 (N.D. Ill. 2017) (finding that communications expressly aimed at the forum state that contain intentional misrepresentations are sufficient for specific personal jurisdiction).

***Plaintiff's Injury Arose from Defendants' Illinois Activities.*** The Defendants' minimum contacts with the forum state were also "*suit-related*." *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 400 (7th Cir. 2020) (emphasis in original). Here, the fraudulent and misleading statements contained in Window Rock's PPM, the PowerPoint Presentation, and the Quarterly Updates, all with Window Rock's logo on them, were distributed to Hines and Plaintiffs in Illinois. As set forth above, Plaintiffs have sufficiently established that each of the Defendants knowingly and intentionally directed false and misleading communications in Illinois. Moreover, Defendant Cardon and other agents of the Window Rock entities traveled to Illinois and directed their emails and communications to Hines in Illinois. Therefore, all of Defendants' activities in Illinois, outlined above (pgs. 7-11), is the very activity that caused the claims at the heart of this litigation.

***Traditional Notions of Fair Play and Justice***. Factors courts consider in determining whether personal jurisdiction over the Window Rock Defendants comport with traditional notions of fair play and substantial justice are: the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Tamburo v. Dworkin*, 601 F.3d 693, 709 (7th Cir. 2010) (Illinois' exercise of personal jurisdiction over defendant in tort action would not offend traditional notions of fair

play and substantial justice because Illinois had strong interest in providing forum for its residents to seek redress for tort injuries suffered within state); *See also*, *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 429 (7th Cir. 2010) (nonresident company's customer base in Illinois and its advertising in Illinois would unquestionably satisfy personal jurisdiction there for claims arising from its business activities that reach into the state).

Given Defendants' connections to Illinois, there is no unfairness in subjecting the Window Rock entities and individuals to jurisdiction in Illinois. Window Rock structured its marketing so that it can easily serve Illinois investors, and Window Rock also identified in its PPM that Fund investments will be nationwide. Def. Mot. to Dismiss, Ex. C, page 18. Thus, the burden of requiring Window Rock to defend a lawsuit in Illinois is minimal. Moreover, Illinois has a strong interest in providing a forum for its residents to seek redress for harms suffered within the state by an out-of-state actor. Lastly, personal jurisdiction over the Window Rock Defendants serves the interstate judicial system's interest in obtaining the most efficient resolution of this dispute, because the other Integrity Defendants were brought into this jurisdiction and answered the Complaint on May 31, 2022. (Dkt. 10).

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court deny the Window Rock Defendants' motion to dismiss in its entirety because this Court has personal jurisdictions over the Defendants and to provide for such additional or alternative relief the Court deems appropriate.

Dated: March 2, 2023

## CERTIFICATE OF SERVICE

      I hereby certify that on this 2nd day of March 2023, that the above and foregoing was filed electronically with the Clerk of the Court using the CM/ECF system, which sent notification to all ECF registrants that are counsel of this record for this matter.

        /s/ *Darrell J. Graham*