UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Michael Magnuson and Constance Magnuson, Linda Mack, Adrianne Shaw, Mike Flanigan, Janean Monroe, Michael Fredrick, John Rich, Byron Smith, Kristine Breuker, Thomas James, Paul Fazio, Pamela Fazio, Mike Freed and Jane Freed,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>Window Rock Residential Recovery Fund, L.P., Window Rock Capital Partner GP, LLC, Window Rock Manager, LLC, Patrick Cardon, Cordell Rogers, Integrity Bank & Trust, Integrity Wealth Management, and Eric Davis,<br><br>　　　　　　　Defendants. | Case No. 22-cv-1010<br><br>Judge Manish S. Shah<br><br>Magistrate Heather K. McShain |

**WINDOW ROCK RESIDENTIAL RECOVERY FUND, L.P., WINDOW ROCK CAPITAL PARTNER, GP, LLC, WINDOW ROCK MANAGER, LLC, PATRICK CARDON, AND CORDELL ROGERS' MEMORADNUM IN SUPPORT OF THEIR REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(2)**

1

Defendants Window Rock Manager, LLC, Window Rock Capital Partner GP, LLC, Window Rock Manager, LLC, Patrick Cardon, and Cordell Rogers (collectively "Window Rock"), in support of their Motion to Dismiss, reply as follows:

### I. INTRODUCTION

Plaintiffs Response memorandum focuses on nationwide jurisdiction under 15 U.S.C. § 78aa on the assumption that they've adequately stated a claim for securities fraud and without clearly demonstrating how each Defendant has the appropriate level of contact to the State of Illinois. This is particularly concerning as Plaintiffs' brought suit against a Defendant who had resigned from his management position prior to Plaintiff's indirect investments had even begun, claiming he had control under 20(a) of the Exchange Act, without adequate evidence to establish any such control regarding the alleged misconduct.

As Defendants' motion is being filed with Defendants' Motion to Dismiss for failure to state a claim under 12(b)(6), it is crucial the court find the appropriate level of contact per defendant to Illinois, because if the federal claims are dismissed, no state pendent jurisdiction can follow. As set forth in further detail below, without state pendent jurisdiction, the Defendants' contacts with Illinois are too minimal and indirect to establish personal jurisdiction. For the reasons set forth below, Plaintiffs' claims should be dismissed for lack of personal jurisdiction.

### II. ARGUMENT

**A. Plaintiff's Response to Window Rock's Motion assumes that Defendants' Motion to Dismiss under 12(b)(6), in whole or in part, will not be granted.**

Although the Securities and Exchange Act of 1934 provides for nationwide service of process under 15 U.S.C. § 78aa, if the court determines the federal claims are dismissed, there will not be pendant jurisdiction over the state law claims, Counts III-VI, thus, the court must still apply the Illinois Long-Arm Statute to determine whether Plaintiffs have personal jurisdiction for the

state law claims. *See Ogilvie v. Beale*, No. 93 C2934, 1993 WL 408365, at *4 (N.D.Ill. Oct. 8, 1993) (court determined that the federal claims must be dismissed, and stated no pendant jurisdiction existed over the state law claims, thus the court had to considered separately whether there was jurisdiction over the state claims); *see also ABN AMRO, Inc. v. Capital Intern. Ltd*., 595 F. Supp. 2d 805 (N.D. Ill. 2008) (court evaluated personal jurisdiction under the Illinois Long-Arm Statute where nationwide personal jurisdiction was also evaluated).

In their Response, Plaintiffs conclude the Defendants have sufficient minimum contacts with Illinois. However, Plaintiffs have failed to sufficiently demonstrate such contacts. Moreover, a complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient to state a claim for fraud. *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990). In doing so here, Plaintiffs have comingled the facts that they now allege demonstrate personal jurisdiction over Window Rock.

In their Response, Plaintiffs assert that each Window Rock defendant intentionally directed their marketing of the fund and reporting on the fund to Hines and investors in Illinois and argue that Defendants' attempt to minimize the roles of each Window Rock Defendant. *See* Plaintiffs' response at p. 8. The allegations presented by Plaintiff, however, are not sufficient to prove that Window Rock, Cardon, or Rogers specifically created conduct directly at the state of Illinois in relation to its alleged misconduct against Plaintiffs. *See Ferris Mfg. Corp. v. S.P.R.D.,* No. 07 C 466, 2007 WL 1438375, at *5 (N.D. Ill. May 15, 2007) (holding, the court "must still assess each defendant's contacts with the forum state"… and when harm is purely economic, plaintiff must establish that defendant's actions indicate an intent to affect Illinois interests) (internal citation omitted). Here, Plaintiffs have simply failed to demonstrate Defendants intent to affect Illinois interests. Therefore, jurisdiction is not proper under the effects doctrine.

*The Window Rock Entities*

Plaintiffs simply state that Window Rock entities "intentionally directed their marketing of the Fund and reporting on the Fund to Hines and investors in Illinois through its agents, Integrity and Cardon." Plaintiffs note that Integrity provided Hines with a PowerPoint presentation that contained false and misleading information and was used to promote the Fund. Plaintiffs' Response, 8. This allegation, however, focuses on Integrity's role in distributing promotional materials, not the Window Rock entities' role. Plaintiffs' Complaint falls short of establishing that Window Rock intended to affect Illinois' interests when distributing these materials. This is particularly true considering that Window Rock communicated with Integrity, not the Plaintiffs or their advisor, when allegedly "marketing" the Fund. Ex. A, ¶41; *See also* Ex. B, ¶11 and Ex. C, ¶7. Moreover, Window Rock's alleged distribution of the PowerPoint presentation cannot be the predicate for fraudulent conduct within the state because the PowerPoint openly disclaims that the projections contained therein are merely predictions. Ex. A, ¶51, Figure 2. The Complaint does not adequately demonstrate how this presentation contained false and misleading information and instead relies on the performance of an entirely different asset to assert that the alleged statements in the PowerPoint were fraudulent. Ex. A, ¶78.

Plaintiffs have also identified the wrong Defendant in this action. Window Rock Residential Recovery Fund, L.P. is not the same fund that Plaintiffs invested in. In Plaintiff's Response, footnote 6, Plaintiffs state Defendants' argument is absurd in light of Window Rock's own description of these entities in the PPM, but the Fund Plaintiffs invested is was indeed Window Rock Residential Recovery Fund C, L.P. which is an entirely different entity than Window Rock Residential Recovery Fund, L.P. The correct entity, Window Rock Residential Recovery Fund C, L.P is not named as a party by Plaintiff. Window Rock does not have sufficient

4

contacts to indicate an intent to have affected Illinois' interests, and therefore, lacks personal jurisdiction under the Illinois Long-Arm Statute.

*Cardon*

Plaintiffs state Cardon conducted business in Illinois and was highly involved in management and supervision of the fund. Plaintiffs' Response, 9. Even as Cardon was the managing director of Window Rock entities, Plaintiffs have not pointed to factual evidence that shows he directed any misrepresentation to the State of Illinois, and have similarly failed to identify any ongoing conduct by Cardon to the state of Illinois. *See, e.g. Cafe Real Estate LLC v. VSP N. Am. LLC*, 262 F. Supp. 3d 637 (N.D. Ill. 2017). Mr. Hine's declaration, attached to Plaintiffs' Response as Exhibit 1, states that Cardon met with him regarding the Fund. Even if this is to be true, Plaintiffs still fail to demonstrate how this meeting is tied to any alleged fraud or misrepresentation, as a meeting discussing one's experience within a company as manager of other Window Rock Funds is not related to Plaintiffs' claims to demonstrate any intent to affect Illinois' interests. *See* Plaintiff's Response, Exhibit 1, ℙ5-7; *see also* Exhibit B, ℙ5-7.

The only direct contact Plaintiffs identify in their Complaint is the Zoom call held in April 2020. Tellingly, Plaintiffs' brief provides no response to refute Window Rock's position that the April 2020 communications made after the Fund's closing do not form the basis of any misconduct direct at the state of Illinois. *See* Defendants' Memorandum at D(1)(b); *see also* Plaintiffs' Response *generally*. As such, Cardon does not have the sufficient contacts to the State of Illinois to indicate an intent to affect Illinois interests. Because he does not have sufficient contacts to indicate an intent to have affected Illinois' interests, he lacks personal jurisdiction under the Illinois Long-Arm Statute.

*Rogers*

Plaintiffs point to the Window Rock Placement Memorandum in an effort to tie Rogers to the events which occurred after he left Window Rock in 2014. *See* Plaintiffs' Response, 9. Rogers was only Chief Financial Officer until 2014, before the fund had closed, and before any of the Plaintiffs were involved in the Fund. Exhibit C, ¶1. Rogers has not had any direct nor indirect contacts with Illinois, including phone calls to anyone in Illinois relating to the allegations in the Complaint. *Id*. at ¶5. Furthermore, Plaintiffs have failed to show Roger's alleged actions indicate an intent to affect Illinois interests.

In *Cafe Real Estate LLC v. VSP N. Am.,* the court acknowledged various types of case-related forum contacts which did not support personal jurisdiction. *Cafe Real Estate LLC v. VSP N. Am. LLC*, 262 F. Supp. 3d 637 (N.D. Ill. 2017). *See Advanced Tactical Ordnance Systems LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014) (placement of advertisements in non-geographically restricted publications, email "blasts" received by forum residents, fulfillment of orders placed by forum residents, and maintenance of interactive website was insufficient to support personal jurisdiction); *see also United Airlines, Inc. v. Zaman*, 152 F.Supp.3d 1041 (N.D. Ill. 2015) (allegedly tortious statements about plaintiff published on defendant's website and communications primarily initiated by plaintiff was insufficient). Ultimately, the *Cafe Real Estate* court determined that the allegations presented in the above referenced factual patterns were too distinct to be considered ongoing conduct directed to the forum. *Cafe Real Estate LLC v. VSP N. Am. LLC*, 262 F. Supp. 3d 637 (N.D. Ill. 2017). Here, Plaintiffs fall even shorter than the fact patterns listed above.

Plaintiffs could not allege any ongoing conduct related to Roger, nor are there any actual communications made by Rogers that Plaintiffs can point to. Rogers had left his position with the Window Rock entities by 2014 and was not in a managing role with the Fund from that point

6

onward. Ex. C, ¶¶1, 6. As such, Rogers does not have the sufficient contacts to the State of Illinois to indicate an intent to affect Illinois interests. Similarly, Rogers is not a controlling person under 20(a).

### B. Plaintiffs have failed to demonstrate Rogers as a controlling person as required under Section 20(a).

Plaintiffs' further attempt to include Rogers in this suit through Section 20(a) of the Exchange Act. Regardless of personal jurisdiction for Window Rock and its entities, Defendant Rogers is not a controlling person under 20(a). Count II of Plaintiffs' Complaint alleges that Patrick Cardon and Cordell Rogers acted as controlling persons within the meaning of Section 20(a) of the Exchange Act, by reason of their positions, and had the power and authority to cause the wrongful conduct complained of. Response, 19. However, Window Rock has provided unrefuted evidence that that Rogers was not in any managing or controlling position at relevant times to find him liable pursuant to Section 20(a). *See* Ex. C, ¶¶1,6. This is fatal to Plaintiffs' claims against Rogers under Count II.

Section 20(a) provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable … unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). *Silverman v. Motorola, Inc.,* 772 F. Supp. 2d 923, 926–27 (N.D. Ill. 2011). The 7th Circuit has looked to whether an alleged control-person, under the meaning of § 78aa, had actually participated in or excised control over the operations of the alleged fraudulent person in general, and then whether the alleged control-person possessed the power or ability to control the specific

7

transaction or activity upon which the primary violation was predicated. *See Harrison v. Dean Witter Reynolds, Inc.,* 974 F.2d 873, 881 (7th Cir. 1992).

Looking to the 11th Circuit case, *Brown v. Enstar Group, Inc*., 84 F.3d 393, Fed. Sec. L. Rep. (CCH) ¶ 99234, 183 A.L.R. Fed. 765 (11th Cir. 1996), the court held that under § 20(a) of the 1934 Securities Exchange Act (15 U.S.C.A. § 78t(a)), the founder of a corporation was not a controlling person of the corporation and therefore was not secondarily liable for the corporation's alleged fraud in preparing and disseminating a prospectus concerning a restructuring of the corporation and its subsidiary, where the founder had resigned as chairman of the board of the parent corporation and, in his continuing role as chairman of the subsidiary's board, had not personally participated in preparation of the prospectus; *see also*, *In re Digi Intern., Inc. Securities Litigation*, 6 F. Supp. 2d 1089, Fed. Sec. L. Rep. (CCH) ¶ 90226 (D. Minn. 1998), decision aff'd on other grounds, 14 Fed. Appx. 714, Fed. Sec. L. Rep. (CCH) ¶ 91467 (8th Cir. 2001) (the court found that allegations of control person liability were only partially sufficient against a corporation's chief financial officer, holding that the plaintiffs did not state a complaint against him with respect to false or misleading disclosures published after he left the company).

Plaintiffs rely on the assertion that the Window Rock Placement Memorandum ("PPM") identifies Rogers as the CFO of the Fund to and the assertion that Rogers managed and conducted audits of Window Rock finances, acted as administrator for all investment vehicles, and was actively involved in investor relations to hold him accountable under 20(a). Plaintiffs' Response, 9-10. This argument is insufficient.

Rogers left his position of CFO in 2014. Ex. C, ¶¶1, 6. During the time Plaintiffs invested in the Fund, Rogers was not the CFO and was not acting as an administrator of the Fund. Plaintiffs' bear the burden of demonstrating that (1) Rogers was performing audits, and (2) he

8

was performing said audits in his capacity as a managing position within Window Rock and have failed to do so. Plaintiff further asks the Court to infer Rogers' involvement in the Fund when asserting "it is reasonable to infer Cardon and Rogers authorized Pettiford to meet with Hines on a quarterly basis in Illinois to report the Fund's performance." Plaintiffs' Response, 11. Again, this is insufficient as it is Plaintiffs' burden to show personal jurisdiction at this stage. Moreover, the quarterly meetings Plaintiffs refer to in their argument took place after Rogers stepped down from his management position within Window Rock.

Plaintiff's portrayal of Rogers as a controlling person during the time period after he had left the company is insufficient. Roger was not in control of any decision or any persons creating misrepresentations that Plaintiffs allege. Therefore, Roger's should be dismissed from Plaintiffs' complaint.

### III. CONCLUSION

For all the reasons stated above, this Court should grant Defendants' Motion to Dismiss Plaintiffs' Complaint, and any other relief that this Court deems just.

Dated: March 30, 2023

Respectfully submitted,

/s/ John C. Ellis

John C. Ellis
David DeSchepper
ELLIS LEGAL P.C.
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
(312) 967-7629
jellis@ellislegal.com
ddeschepper@ellislegal.com

9