**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Michael Magnuson and Constance Magnuson, Linda Mack, Adrianne Shaw, Mike Flanigan, Janean Monroe, Michael Fredrick, John Rich, Byron Smith, Kristine Breuker, Thomas James, Paul Fazio, Pamela Fazio, Mike Freed and Jane Freed, <br><br> Plaintiffs, <br><br> v. <br><br> Window Rock Residential Recovery Fund, L.P., Window Rock Capital Partner GP, LLC, Window Rock Manager, LLC, Patrick Cardon, Cordell Rogers, Integrity Bank & Trust, Integrity Wealth Management, and Eric Davis, <br><br> Defendants. | Case No. 22-cv-1010 <br><br> Judge Manish S. Shah <br><br> Magistrate Heather K. McShain |

**WINDOW ROCK RESIDENTIAL RECOVERY FUND, L.P., WINDOW ROCK CAPITAL PARTNER, GP, LLC, WINDOW ROCK MANAGER, LLC, PATRICK CARDON, AND CORDELL ROGERS' MEMORANDUM IN SUPPORT OF THEIR REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER RULE 12(b)(6)**

1

Defendants Window Rock Manager, LLC, Window Rock Capital Partner GP, LLC, Window Rock Manager, LLC, Patrick Cardon, and Cordell Rogers (collectively "Window Rock"), in support of their Motion to Dismiss, reply as follows:

### I. INTRODUCTION

Even in their Response Brief, Plaintiffs do not state with specificity which of the eight defendants made the alleged fraudulent statements at issue in their Complaint. Instead, Plaintiffs continue to hedge their allegations by stating that Window Rock "prepared and/or authorized" misleading documents and statements and ask the Court to consider "what if" Window Rock misled the Plaintiffs. These attempts have only highlighted the deficiencies and utter lack of precision in the Complaint that warrant its dismissal. For the reasons set forth below, Plaintiffs' claims should be dismissed for failure to state a claim.

### II. ARGUMENT

**A. Window Rock's Motion is Restricted to the Pleadings as Window Rock's Use of Exhibit B is Limited to Information Previously Set Forth in the Complaint.**

Plaintiffs argue that Exhibit B to Window Rock's Motion to Dismiss should be stricken, or alternatively that Window Rock's Motion be converted to a Motion for Summary Judgment due to the inclusion of Exhibit B. This is not the case. If the plaintiff chooses to provide additional facts, beyond the short and plain statement requirement, the plaintiff cannot prevent the defense from suggesting that those same facts demonstrate the plaintiff is not entitled to relief. *Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Exhibit B to Window Rock's Rule 12(b)(6) Motion is used for this purpose. The Declaration of Patrick Cardon was cited to correct the chain of communication between Window Rock and the Plaintiffs which Plaintiff references in their Complaint. *See* Window Rock's 12(b)(6) Motion at p. 6. The use of this exhibit

2

does not introduce a new area of extrinsic facts that goes beyond what is referenced and relied on in the Complaint. As such, the Exhibit should not be stricken, and Window Rock's Motion should be considered a Rule 12(b)(6) motion.

**B. The Response Highlights the Contradictory Allegations Set Forth in the Complaint that Demonstrate Impermissibly Lumped Pleadings**

Window Rock's Motion does not ignore the allegations set forth in the Complaint, but rather takes them as drafted. While the Response highlights the facts surrounding the chain of communication between Window Rock and the Plaintiffs, the proffered facts do not address Window Rock's objections on this issue—that Plaintiffs assert that Window Rock and Integrity were acting in concert without any allegations to demonstrate as much.

Indeed, the Response identifies the need for separate allegations of each Defendant's alleged misconduct in providing a bulleted list that highlights the contradictory allegations set forth in the Complaint. *See* the Response at 4. The allegation set forth in Paragraph 2 of the Complaint asserts that "both Window Rock and Integrity marketed the Fund to Plaintiffs' Illinois financial advisor, Thomas Hines." Ex. A, ¶2. Even when reading this allegation in conjunction with the Paragraphs suggested by Plaintiffs, the claim that Window Rock marketed the Fund to Hines is unfounded. *See* Ex. A, ¶¶2, 43, 45, 50-53. Moreover, Paragraph 43 of the Complaint do not support Plaintiffs' allegations that Window Rock marketed the Fund because the contents of Paragraph 43 relate to a Zoom call which—based on the Complaints' allegations—took place *after* the Fund was closed. The allegations provided in support of Plaintiffs' claim that Window Rock and Integrity distributed materially false statements set forth in Paragraph 3 of the Complaint similarly fail to provide the required context that Window Rock distributed the statements. *See* Ex. A, ¶¶3, 54-57. The Complaint also fails to support Plaintiffs' claim that Window Rock concealed financial information as it pleads the opposite—that Window Rock provided unaudited financial

information to Integrity. *See* Ex. A, ¶¶41.

The vague nature of Plaintiffs' allegations frustrates Window Rock's ability to make a clear and concise answer to several pivotal allegations of the Complaint as it seemingly alleges that Window Rock provided unaudited information to Integrity for Integrity to distribute while simultaneously withholding critical information. Tellingly, the Complaint is silent as to any allegations that Window Rock instructed Integrity to withhold or alter information.

**C. Plaintiffs Attempt to Brush Aside Rule 9(b)'s Heightened Pleading Requirement**

While overly rigid compliance with the Federal Rule is discouraged, Plaintiffs must show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy. *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854–55 (7th Cir. 2009). The purpose of the elevated pleading standard for fraud claims ensures that the plaintiff "conduct[s] a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014). Plaintiffs cannot sidestep the heightened pleading standards of 9(b) now that they have been called to task.

the Response provides a "cherry picked" half-quote from *Mamalakis* in an attempt to minimize the pleading standard. Indeed, the remainder of the quote comments on the factual specificity needed stating that a pleading must "inject[] precision and some measure of substantiation" into the allegations of fraud. *United States ex rel. Mamalakis v. Anesthetix Mgmt. LLC*, 20 F.4th 295, 301 (7th Cir. 2021). Although a pleading need not "exclude all possibility of honesty in order to give the particulars of fraud, the grounds for the plaintiff's suspicions must make the allegations *plausible,* even as courts remain sensitive to information asymmetries that

4

may prevent a plaintiff from offering more detail. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 778 (7th Cir. 2016). Here, the Complaint does not do so.

### a. Plaintiffs Did Not Sufficiently Identify Who Made the Fraudulent Statements

Plaintiffs turn to *City of Chicago v. Smollett* in their assertion that they do not have to name the particular party making the fraudulent statement. 421 F. Supp. 3d 565 (N.D. Ill. 2019). This assertion is misguided. The Defendant in *Smollett* argued that the plaintiff failed to meet the Rule 9(b) standards by failing to state "exactly who Smollet made the false statements to." *Id.* at 575. This is the opposite of the argument before this Court. While the Complaint makes clear that certain statements were made to Plaintiffs' financial advisor, rather than to Plaintiffs themselves, the Complaint does not identify which of the eight Defendants made the alleged statements with the necessary particularity. Instead, Plaintiffs' allegations operate on the assumption that Window Rock was involved in distributing and authoring the specific statements found in the PowerPoint presentation and Quarterly Updates simply because the information came from Window Rock at some point in the past or bore Window Rock's logo. *the Response, pp 6-7; see also Ex. A to Window Rock's 12(b)(6) Motion* Ex. A, ¶¶50, 53, 55, 57, 58, 60, 73. These allegations are insufficient as the Complaint readily admits that Window Rock sent unaudited financial information to Integrity and that Integrity distributed information outward to Plaintiffs' financial advisor. Ex. A, ¶¶41, 45, 47. The Complaint is silent as to any allegation that Window Rock reviewed any materials created or distributed by Integrity and is further silent as to any allegations that Window Rock instructed Integrity to make certain statements or withhold certain information. This is fatal to Plaintiffs' attempts to claim that Window Rock and Integrity acted together in authoring or distributing any such statements. *Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736, 744 (N.D.Ill.1981)(holding a plaintiff is required to provide multiple defendants with

reasonable notice of the part each defendant is alleged to have taken in an alleged scheme).

the Complaint does not state a sufficiently detailed and cohesive theory of fraud. Plaintiffs allege that Window Rock provided Integrity with "unaudited financial information," "critical financial information," and that "all financial reporting coming from Window Rock came through Integrity." Ex. A, ¶¶41, 45, 47. And further that Integrity, not Window Rock, failed to send quarterly updates and financial statements to Plaintiffs. *See* Ex. A, ¶¶41, 70. The Complaint does **not** include: i) any allegations that Window Rock instructed Integrity to withhold information from Plaintiffs; or ii) any allegations that the information provided by Window Rock to Integrity was altered or false. Indeed, Plaintiffs fail to plead the specifics of any communications or conversations between Window Rock and Integrity that would demonstrate the two groups of Defendants acted in any manner that would imply fraudulent conduct or a concerted action taken by both Window Rock and Integrity.

### b. Plaintiffs Did Not Sufficiently Identify that the Statements Were Materially False

#### i. Promotional Material

The Complaint identifies a conclusory motive for Window Rock and Integrity's alleged actions—a desire to induce Plaintiffs to invest in the Fund—but it does not explain how Window Rock fraudulently did so. Here again, the Complaint is silent as to any allegations that the information promoting the Fund provided to Plaintiffs (whether by Window Rock or Integrity) was false. Instead, the Complaint requires the reader to conclude that because the final performance of the Fund was substandard, that Window Rock misrepresented the performance of the asset pools in the PowerPoint presentation.

#### 1. The PowerPoint Presentation

The Complaint requires the reader to make the above-stated conclusion because the

PowerPoint makes no statement about the asset pool in which Plaintiffs actually invested. Ex. A, ¶¶51-52. Plaintiffs double down on this assumption in the Response in asking the Court to indulge in hypothetical situations that would allegedly support their position. *Response at p. 9.* The problem, however, is that Plaintiffs do not provide sufficient allegations to support the hypothetical scenarios that they now pose because such facts do not exist. Plaintiffs allege that the figures presented in the PowerPoint presentation are based on the performance of the Fund they invested in. *See* Ex. A, ¶78. For example, in Paragraph 78 of the Complaint, Plaintiffs allege that "Based on Plaintiffs' experience with the eighth Fund, the Fund at issue, Plaintiffs believe that the seven other funds were performing and ultimately performed much worse than Window Rock reported in the table." Similarly, Cardon's statements from the April 2, 2020 Zoom call do not demonstrate the performance of the asset pools from the PowerPoint presentation were false or misleading. Ex. A, ¶¶66-69. As stated on Figure 2 of the Complaint, the performance of aspects of the seven asset pools were labeled as projections. Cardon's alleged statements in the Zoom call were concerning the final performance of the Fund. As discussed in further detail *infra,* Plaintiffs cannot reasonably rely on the projected numbers of the PowerPoint presentation as it relates to the future performance of their investment. As such, Plaintiffs cannot state a claim that the PowerPoint presentation was materially false.

### 2. The Quarterly Updates

The Response's discussion regarding the falsity of the Quarterly Updates is built upon the shaky foundation of their claims that the PowerPoint presentation was misleading. Indeed, the Response asserts that it is a reasonable inference that *if* Window Rock consistently lied about the performance of the Fund that it must have also misrepresented the performance of the other funds. In doing so, Plaintiffs cite *Commodity Futures Trading Comm'n v. Yukom Communications Ltd.*,

19-CV-05416, 2021 WL 4477874, at *2 (N.D. Ill. Sept. 30, 2021). *Commodity Futures*, however, is inapplicable to Plaintiffs' hypothetical scenario because *Commodity Futures* requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Plaintiffs again turn to the final performance of the seven asset pools from the PowerPoint presentation rather than providing any factual content that would support their claim that Window Rock misrepresented the performance of these asset pools in the PowerPoint or Quarterly Updates. Plaintiffs' allegations of fraud are not comprised of misleading statements of fact or a scheme to conceal evidence but are rather based on the unfortunate final performance of eight individual investment funds. This is simply not fraud.

### ii. Statements Made During and After the Life of the Fund

While Plaintiffs suggest that the identity of the Defendant making the false statement is an issue of fact to be addressed down the road through further litigation, they are mistaken. *See* Response p. 10. The identity of the party making the false statement is a pleading requirement under Federal Rule 9(b). Taking the Complaint as true, the allegations establish that Window Rock provided Integrity with unaudited financial information. Ex. A, ¶41. There are no allegations that Window Rock instructed Integrity to withhold or conceal any of the information provided by Window Rock to Integrity. Similarly, the Complaint is silent as to any allegations that Window Rock and Integrity were regularly communicating with each other about the Fund or the alleged contents of such communications.

Similarly, Window Rock itself did not conceal this information. Plaintiffs have pointed to two series of communications during and after the life of the Fund: alleged communications with Pettiford and those with Cardon from the April 2, 2020 Zoom call. Plaintiffs have failed to plead the factual context to demonstrate that either of these communications were materially false.

8

The Complaint fails to establish what was materially false about any alleged statements from Cardon or Pettiford. The statements attributed to Cardon included: i) an update on the final performance of the eight funds (Ex. A, ¶66); ii) that "written communications were not clearly communicating what was really going on in the fund" (Ex. A, ¶68); and, iii) that "if you looked at the financial statements it is not a pretty picture" and "[Pettiford's] role was to communicate this and it didn't get communicated" (Ex. A, ¶69). These statements could not have been relied on by Plaintiffs when investing in the Fund, or during the Fund's lifetime, as they were not made until the Fund had closed. Ex. A, ¶¶4, 53, 64-69. These statements do not demonstrate that Window Rock made false or misleading statements to Plaintiffs during the life of the Fund. Cardon's statements that the communications could have been clearer or that the financial statements were not the prettiest of pictures do not suggest fraudulent communications. This is true, especially in light of Plaintiffs' allegations that Window Rock provided unaudited financial information to Integrity and that Integrity—not Window Rock—failed to provide certain financial statements to Plaintiffs. Ex. A. The statements attributed to Cardon could not have been relied on by Plaintiffs when investing in the Fund, or during the Fund's lifetime, as they were not made until the Fund had closed. Ex. A, ¶¶41, 70. Without any allegation providing factual support or context to Plaintiffs' claim that "Window Rock and Integrity concealed the financial information," Plaintiffs' claims cannot stand.

Further, the Complaint does not indicate when Pettiford made the statement with any more particularity than that Pettiford met with Hines periodically. Ex. A, ¶¶ 105, 120. Moreover, the allegedly false statement attributed to Pettiford is summarized as asserting that the Fund's return would be positive and in the 6-9% range[1]. Such statements are forward-looking statements that do

---

[1] Window Rock is left to assume what the statement made by Pettiford is because Plaintiffs do not provide anything more precise in their Complaint. Ex. A, ¶67.

9

not rise to the level of a materially fraudulent statement.

### D. Disclaimers and Puffery

Plaintiffs fail to adequately respond to the law provided by Window Rock illustrating that indefinite statements of growth are unactionable. The Seventh Circuit has long held that "cases involving forward-looking statements are unique." *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 648 (N.D. Ill. 2020)(internal citations omitted), aff'd sub nom. *Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc*., 21-1155, 2022 WL 1449184 (7th Cir. 2022); A "fact is 'a thing done or existing' or '[a]n actual happening,' " while an "opinion is 'a belief[,] a view,' or a 'sentiment which the mind forms of persons or things.' " *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183 (2015). "Predictions of future performance are inevitably inaccurate because things almost never go exactly as planned." *Arazie v. Mullane*, 2 F.3d 1456, 1468 (7th Cir. 1993).

Pettiford's statements, to the extent that are sufficiently identified, can be seen as nothing more than predictions of growth. As alleged, the statement attributed to Pettiford is that he made "similar representations" to Hines that the Fund's return would be positive. No specific statements are alleged to provide any context that the statements were anything more than forward-looking predictions of growth.

Plaintiffs' argument that Window Rock is not protected by the disclaimers set forth in the promotional materials distributed to Plaintiffs is similarly unavailing. Plaintiffs cite to *F.D.I.C. v. Masarsky* to state that an intentional lie cannot be "wiped clean" by a disclaimer. 968 F. Supp. 2d 915, 929 (N.D. Ill. 2013). This argument, however, is not presented in the context of the communications between Window Rock and Plaintiffs. The PPM provided was drafted before Plaintiffs invested in the Fund and openly disclaimed that the statements contained therein were

forwarding-looking and speculative. *See* Ex. C to Window Rock's Motion, pp. 18-19. Moreover, the Quarterly Statements, a sample of which was provided by Plaintiffs for the first time in their Response to Window Rock's 12(b)(2) Motion to Dismiss despite its reference in the Complaint, contain a similar disclaimer. While the Response argues that Window Rock simultaneously lied when making these disclaimers, the Complaint admits Window Rock provided unaudited financial information to Integrity. Ex. A, ¶41. For this exception to apply, Plaintiffs must have the requisite pleadings to support it. Here, the Complaint does not.

### E. Scienter

Plaintiffs have not sufficiently pleaded scienter to state a claim for securities fraud. Plaintiffs base their intent allegations on their unsupported claims that the Quarterly Updates were "materially false." *See* Response at p. 12. This argument fails, as discussed above, because Plaintiffs predicate their assertion that the Quarterly Updates were false on assumptions raised in the Response and Cardon's 2020 post-Fund comments. *See* Response at pp. 9 and 12. Here, again Plaintiffs' argument relies on assumptions not supported by the Complaint to support their argument. Plaintiffs argue that Window Rock issued false Quarterly Statements, "continued to lie about the Fund's performance," and used "false and misleading PowerPoint presentation" to promote the Fund. Response at p. 12. The Complaint, however, demonstrates that these arguments are lacking the factual support needed to state a claim with specificity. Plaintiffs have already admitted: that Window Rock turned over the allegedly required financial statements to Integrity and that the performance of the seven funds is assumed to be false based on the final performance of the eighth Fund the Plaintiffs actually invested in. Ex. A, ¶¶41 and 78 (stating that the based on Plaintiffs' experience with the eighth Fund, the Plaintiffs believe the statements regarding seven other funds were false). The Complaint actively undermines their arguments that Window Rock

11

concealed information from them.

Plaintiffs also argue that Cardon and Rogers would have to have known about the false statements due to their positions with the companies. This is not sufficient, as simply holding senior positions within a company "do not suggest scienter without additional support from internal documents or communications." *Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*, No. 17-cv-01713, 2018 WL 4616356, at *8 (N.D. Ill. Sept. 26, 2018); *see also Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 837 (N.D. Ill. 2000) ("pleading scienter based exclusively on a defendant's corporate position is insufficient to survive a motion to dismiss.").

Similarly, Plaintiffs have failed to identify Window Rock's motives in committing the fraud and instead purport to rely on generic motives of financial gain. Again, this is insufficient. *See Davis v. SPSS, Inc.,* 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005) (Motives such as increasing a company's value, "meeting analyst expectations and reaping higher compensation, are basic motivations not only of fraud, but of running a successful corporation. Were courts to accept these motives as sufficient to establish scienter, most corporate executives would be subject to such allegations, and the heightened pleading requirements for these claims would be meaningless."); *see also Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.,* 679 F.3d 952, 956 (7th Cir. 2012)(incentives to act "in order to keep their jobs, improve their bonuses, and increase the value of their stock options" were too generic to support a strong inference of scienter). As such, Plaintiffs' securities claims warrant dismissal.

### III. CONCLUSION

For all the reasons stated above, this Court should grant Defendants' Motion to Dismiss the Complaint, and any other relief that this Court deems just.

Dated: March 30, 2023

          Respectfully submitted,

          /s/ John C. Ellis

John C. Ellis
David DeSchepper
ELLIS LEGAL P.C.
200 West Madison Street, Suite 2670
Chicago, Illinois 60606
(312) 967-7629
jellis@ellislegal.com
ddeschepper@ellislegal.com