UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL MAGNUSON, CONSTANCE MAGNUSON, LINDA MACK, ADRIANNE SHAW, MIKE FLANIGAN, JANEAN MONROE, MICHAEL FREDRICK, JOHN RICH, BYRON SMITH, KRISTINE BREUKER, THOMAS JAMES, PAUL FAZIO, PAMELA FAZIO, MIKE FREED, and JANE FREED, <br><br>           Plaintiffs, <br><br>   v. <br><br>WINDOW ROCK RESIDENTIAL RECOVERY FUND, L.P., WINDOW ROCK CAPITAL PARTNER GP, LLC, WINDOW ROCK MANAGER, LLC, PATRICK CARDON, CORDELL ROGERS, INTEGRITY BANK & TRUST, INTEGRITY WEALTH MANAGEMENT, and ERIC DAVIS, <br><br>           Defendants. | No. 22 CV 1010 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Fifteen plaintiffs invested in a Window Rock fund. The Fund performed poorly and by the time of its closing, plaintiffs lost $1.3 million dollars. Plaintiffs allege that the defendants induced them to invest in the Fund based on false and misleading statements in the Fund's promotional materials. They also allege that defendants distributed quarterly updates about the financial condition of the Fund that were false and misleading about the actual performance of the Fund. Plaintiffs bring claims for securities fraud under the Securities Exchange Act of 1934 against all Window Rock defendants and for control-person liability against Patrick Cardon and

Cordell Rogers. Plaintiffs also bring state-law claims against all Window Rock defendants for violations of the Illinois Securities Law of 1953 and the Illinois Uniform Deceptive Trade Practices Act, common law fraud, and negligent misrepresentation. The Window Rock defendants move to dismiss plaintiffs' complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For reasons discussed below, the motion to dismiss under Rule 12(b)(2) is denied and the motion to dismiss under Rule 12(b)(6) is granted in part and denied in part.

I. **Legal Standards**

Rule 12(b)(2) governs dismissals based on lack of personal jurisdiction. When a defendant moves to dismiss based on personal jurisdiction, the plaintiff has the burden of establishing a prima facie case of jurisdiction. *See John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018). If a defendant submits affidavits opposing the exercise of jurisdiction, a plaintiff "must submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Foundation v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). I accept all factual allegations in the complaint as true and resolve "any factual disputes in the affidavits in favor of the plaintiff." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010).

Rule 12(b)(6) governs dismissals based on the failure of the complaint to state a claim. A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts

that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

Plaintiffs alleging fraud must meet heightened pleading requirements under Rule 9(b). Fed. R. Civ. P. 9(b). Plaintiffs "must state with particularity the circumstances constituting fraud or mistake." *Id*. They must describe "the who, what, when, where, and how" of the fraud, though the "requisite information as to those five questions may differ" based on the facts of a case. *See Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018). In allegations of fraud involving multiple defendants, a complaint "should inform each defendant of the nature of his alleged participation in the fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). Complaints that "lump" multiple defendants together do not satisfy the pleading requirements under Rule 9(b). *See id*.

**II.     Facts**

   **A.     The Parties**

Plaintiffs were investors in the Window Rock Residential Recovery Fund C, L.P.[1] [1] ¶ 2.[2] Integrity Bank & Trust provides an investment platform for registered investment advisors and banks. [1] ¶ 42; *see also* [10] ¶ 42. Plaintiffs share a financial advisor, Thomas Hines, through whom they invested assets with Integrity. [1] ¶¶ 10, 44. Integrity pooled assets from individual investors, including plaintiffs, and invested them in the Fund. [1] ¶ 44. The Fund's objective was to invest in distressed residential assets. [1] ¶¶ 33–34. Window Rock Capital Partner GP, LLC is a Delaware corporation and General Partner sponsoring the Fund. [1] ¶ 26. Window Rock Manager, LLC served as investment manager of the Fund. [1] ¶ 27. Patrick Cardon is a Managing Director of the Fund. [1] ¶ 28. Cordell Rogers was the Chief Financial Officer of the Fund. [1] ¶ 29.

   **B.     Promotion of the Fund**

Plaintiffs received promotional materials about the Fund from Integrity. [1] ¶¶ 44, 50, 73. The presentation bore the logo of Window Rock, "sponsored by"

---

[1] The parties dispute the nature of the plaintiffs' investments with the "Fund" at issue. The complaint refers to "Fund C" as the "Fund" that plaintiffs invested in, one of eight asset pools in a portfolio. [1] ¶¶ 1, 51. In their briefs and declarations in support of their Rule 12(b)(2) motion, defendants say that the named defendant, Window Rock Residential Recovery Fund, "did not purchase or hold investments related to [Fund C]" and point out that "Fund C" is not a named defendant. [30-1] at 3. Plaintiffs say that Fund C (the "Fund") was one of eight funds controlled by Window Rock Residential Recovery Fund, LP. [37] at 3. At this stage, I accept as true plaintiff's allegation that they invested in "Fund C" and that it was controlled by defendant Window Rock Residential Recovery Fund.

[2] Bracketed numbers refer to docket numbers on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings.

Integrity Bank & Trust. [1] ¶ 50. The presentation included a table, "Current Individual Pool Performance," that contained figures on the performance of seven different asset pools. [1] ¶ 51. These figures were used to promote investment in a new, eighth asset pool—the Fund. [1] ¶ 51. The table showed that six of the seven asset pools were performing positively with projected rates of return between 12% and 43%. [1] ¶¶ 51–52. Hines recommended the investment opportunity to plaintiffs and provided them with a copy of the presentation. [1] ¶ 74. Plaintiffs then invested assets with Integrity, which in turn pooled the assets and invested them in the Fund. [1] ¶¶ 42–44, 75–76.

### C.     Updates about the Financial Condition of the Fund

As investors in the Fund, plaintiffs received information about the Fund's performance through Quarterly Updates and annual asset reviews. [1] ¶ 54. Quarterly Updates were prepared by Window Rock, sent to Integrity, and distributed to plaintiffs. [1] ¶¶ 54–55. Annual asset reviews were prepared by Integrity. [1] ¶ 54. Quarterly Updates showed that the Fund was performing positively from 2017–19. [1] ¶ 55. The Quarterly Update that plaintiffs received in the third quarter of 2019 showed a positive margin of safety, i.e., the difference between the value of the assets held and the investment amounts to purchase those assets. [1] ¶¶ 56–57. Additionally, Integrity's 2018 asset review showed the Fund was meeting expectations. [1] ¶ 48.

Plaintiffs, however, did not receive other financial information about the condition of the Fund: certain custodian statements, audited income statements, and

balance sheets. [1] ¶ 58. Those financial reports showed that the Fund was losing money while the Quarterly Updates and asset reviews showed that it was performing positively. [1] ¶¶ 58–60.

### D. Closing of the Fund

The Fund was closed in February 2020. [1] ¶ 61. After receiving notice of the closing, Hines set up a video call with Window Rock and Integrity in April. [1] at ¶¶ 64–65. Patrick Cardon and Cordell Rogers from Window Rock and Eric Davis and Justin Dealy from Integrity participated in the call. [1] ¶ 65. Cardon reported that of the eight asset pools, three made profits, four lost money, and one broke even. [1] ¶ 66. Davis said that Jeff Pettiford, an Executive Officer and Sales Manager for Window Rock, had advised him that the Fund's return was going to be positive and in the 6–9% range. [1] ¶ 67. Cardon admitted that Window Rock's "written communications were not clearly communicating what was really going on in the fund." [1] ¶ 68. He said that the Quarterly Updates were sent to Integrity for distribution to investors along with financial statements. [1] ¶ 69. He admitted, "If you look at the financial statements it is not a pretty picture." [1] ¶ 69. He also admitted that Pettiford's role "was to communicate this and it didn't get communicated." [1] ¶ 69. Plaintiffs lost approximately 66% of their investments when the Fund was closed. [1] ¶ 62.

**III. Analysis**

  **A. Personal Jurisdiction**

Defendants move to dismiss for lack of personal jurisdiction under Rule 12(b)(2).[3] The Securities Exchange Act provides for nationwide service of process. 15 U.S.C. § 78aa. Where a federal statute authorizes nationwide service of process, personal jurisdiction is "proper, as long as defendants have adequate contacts with the United States as a whole." *Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1035 (7th Cir. 2000). Defendants' citizenship in the United States is all that is required to show sufficient contacts to support the exercise of jurisdiction. *See Fitzsimmons v. Barton*, 589 F.2d 330, 333 (7th Cir. 1979).

Plaintiffs bring securities fraud claims against Window Rock under the Exchange Act. Personal jurisdiction is proper because each Window Rock defendant—the three Window Rock entities as well as Patrick Cardon and Cordell Rogers—is a

---

[3] In support of their motion to dismiss under Rule 12(b)(2), defendants attach two exhibits: the Declaration of Patrick Cardon, [30-2], and the Declaration of Cordell Rogers, [30-2] at 33–35. Defendants also attach the Cardon Declaration in support of their Rule 12(b)(6) motion. [31-2] at 29–31. Defendants are permitted to submit evidence in support of their Rule 12(b)(2) motion. *See Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003). But evidence cannot be considered in support of their Rule 12(b)(6) motion unless it is a part of the pleadings. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6)… matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *see also Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). Because the Cardon Declaration is extrinsic to the plaintiffs' pleadings, I disregard it in considering the Rule 12(b)(6) motion. Plaintiffs, however, do not object to the admission of Exhibit C, the Private Placement Memorandum, [31-2] at 33–115, and reference it in their complaint. *See* [38] at 2 n.2; [1] ¶¶ 33, 36, 38. The PPM is part of the pleadings.

7

citizen of the United States. *See* [30-1] at 2–4. Where personal jurisdiction exists over defendants for the federal securities claims, pendent personal jurisdiction over plaintiffs' state-law claims is also proper as long as the claims arise out of the same nucleus of operative fact. *See Robinson Eng'g Co. Pension Plan & Tr. v. George*, 223 F.3d 445, 450 (7th Cir. 2000) ("[T]he same logic that lies behind the supplemental jurisdiction statute for purposes of subject matter jurisdiction, 28 U.S.C. § 1367, supports the application of supplemental personal jurisdiction over claims that are properly before the court under § 1367."). Because personal jurisdiction exists over the Window Rock defendants for the federal securities claims and the state-law claims arise from the same allegations of fraud, defendants' motion to dismiss for lack of personal jurisdiction is denied.

### B. Federal Securities Claims

Plaintiffs bring a claim under Section 10(b) of the Exchange Act and SEC Rule 10b-5 against all Window Rock defendants. They also bring a claim under Section 20(a) for control-person liability against Patrick Cardon and Cordell Rogers.

Section 10(b) of the Exchange Act prohibits (1) the use or employment of any deceptive device; (2) in connection with the purchase or sale of any security; and (3) in contravention of Securities and Exchange Commission rules and regulations. 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements this statute and prohibits the making of any "untrue statement of a material fact" or the omission of any "material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5.

8

To state a claim under Section 10(b), a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrix Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011). An omission is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the total mix of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (quotation omitted). Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007). Private plaintiffs bringing Section 10(b) and Rule 10b–5 claims must meet the heightened pleading standard under both Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act. *See Walleye Trading LLC v. AbbVie Inc.*, 962 F.3d 975, 977 (7th Cir. 2020). Under the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A). A complaint survives only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc.*, 551 U.S. at 324. Plaintiffs "must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference." *Id.* at 328. Plaintiffs must show that defendants "either knew their statement was false or were reckless in disregarding a substantial

9

risk that it was false." *Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008).

Plaintiffs allege two statements as the basis for their fraud claims: the PowerPoint presentation used in promotion of the Fund and the Quarterly Updates created by Window Rock. [1] ¶ 3; [38] at 10.

### 1. *Promotional PowerPoint Presentation*

Plaintiffs argue that the PowerPoint presentation they relied on before investing in the Fund misrepresented the actual performance of the existing seven asset pools and induced them to invest in the Fund. [1] ¶¶ 51, 116. The presentation included figures on the performance of the existing asset pools I–VII. [1] ¶ 52. The table showed that six of those seven asset pools had projected positive rates of return between 12% to 43%. [1] ¶ 52. Plaintiffs allege that the actual performance of the seven asset pools was materially worse than what was represented in the presentation. [1] ¶ 53. They support this allegation by pointing to Cardon's statement during the April call that only three asset pools made profits while four lost money and one broke even. [38] at 10–11. Plaintiffs also argue that a reasonable inference can be made that "if Window Rock consistently lied about the performance of Fund Pool VIII, it was also misrepresenting the performance of the other seven fund pools." [38] at 11.

Reporting the performance of the seven existing pools to promote interest in the new Fund is, as it relates to the new Fund, the type of aspirational statement that is nonactionable. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

1432 (3d Cir. 1997) ("[A]n accurate report of past successes does not contain an implicit representation that the trend is going to continue."). Even if the presentation could be construed as a representation about the anticipated performance of the new Fund, forecasts and predictions are not "subject to objective verification" and as a result are rarely actionable. *See Sears v. Glasser*, 64 F.3d 1061, 1065 (7th Cir. 1995); *see also City of Taylor Police & Fire Ret. Sys. V. Zebra Techs. Corp.*, 8 F.4th 592, 595 (7th Cir. 2021) ("Retrospective disclosures can and should be precise because corporations generally possess good information about completed operations. The law tolerates greater imprecision from forecasts because predicting the future is an uncertain enterprise.").

Predictions and forecasts may still be actionable if they do not have a reasonable basis. *See Glasser*, 64 F.3d at 1066. But plaintiffs do not plead sufficient facts to allege that the performance figures for the seven asset pools contained in the presentation were false or misleading. Cardon's statement at the April call that four of the asset pools had lost money at the time of closing does not contradict the accuracy of the presentation at the time of its distribution. *See* [1] ¶ 51 (table refers to "current individual pool performance"). And inferring that that the performance figures for the seven existing asset pools were false because Window Rock later lied about the performance of the eighth Fund is a circular leap that assumes plaintiffs state a claim about the Fund statements. Because plaintiffs do not sufficiently allege that the statements in the presentation were false or misleading, they are not actionable.

11

      *2.     Quarterly Reports*

Plaintiffs argue that the Quarterly Updates—prepared by Window Rock and distributed by Integrity—were false and misleading because they did not accurately reflect the financial condition of the Fund. [1] ¶¶ 3, 58. They allege that the financial reports containing information that the Fund was "in fact cratering" contradicts the positive performance figures contained in the Quarterly Updates. [1] ¶¶ 55, 58. Central to this allegation is that although plaintiffs received the Quarterly Updates through Integrity, they did not receive the other financial reports. [1] ¶ 70. Defendants argue that the Quarterly Updates were not misleading because the complaint's Table 1 (comparing the financial performance figures contained in the Quarterly Updates compared to the other financial reports), [1] ¶ 59, does not compare the same categories of information. [31-1] at 11. Defendants also argue that the complaint impermissibly lumps together the seven defendants, "without specifying or differentiating Window Rock's role in the alleged Fraud from that of Integrity's." [31-1] at 6. Defendants argue that the complaint cannot allege that Window Rock intended to make a false statement because Window Rock provided all unaudited financial information to Integrity. [31-1] at 7.

I accept as true plaintiffs' allegation that the Quarterly Updates contradicted information contained in the other financial reports (the custodian statements, audited income statements, and balance sheets). Fraud embraces half-truths "that the defendant knows to be misleading and which the defendant expects another to act upon to his detriment and the defendant's benefit." *United States v. Stephens*, 421

F.3d 503, 507 (7th Cir. 2005). Plaintiffs plausibly allege that the Quarterly Updates were incomplete because they did not contain all the relevant financial information about the Fund's performance.

Separate from the Quarterly Updates, plaintiffs refer to other statements about the positive performance of the Fund. In the April call, after the Fund closed, Integrity's Eric Davis said that Pettiford advised him that the Fund was going to perform positively "in the 6–9% range." [1] ¶ 67. The statements made to Davis were not statements made to plaintiffs and they were loose predictions, so are not actionable. The complaint also alleges that "Pettiford had made similar representations to Hines." [1] ¶ 67. Merely alleging "similar representations" does not state the "who, what, when, where, and how" of the fraud. *Webb*, 906 F.3d at 576. And this too is another "loose prediction" or forecast that is not sufficiently definite to constitute a material misstatement of fact. *See Searls*, 64 F.3d at 1067.

Although the Quarterly Updates may have been incomplete (or drawing inferences in plaintiffs' favor, misleading when compared to the other financial reports), plaintiffs nevertheless fail to plead Window Rock's complicity in the omission and the requisite scienter with particularity. Both the Quarterly Updates and the financial reports were generated by Window Rock, but the complaint alleges that "Window Rock and Integrity concealed the detailed financial information" from plaintiffs. [1] ¶ 41. The complaint does not allege that Window Rock instructed Integrity to withhold the financial reports (which if conveyed to plaintiffs would have completed the picture depicted by the Quarterly Updates), and the crux of plaintiffs'

13

misrepresentation theory is one of omission. To survive dismissal, plaintiffs must state with particularity which defendant made the fraudulent statement and how that amounted to fraud. *See* Fed. R. Civ. P. 9(b). Alleging that both Window Rock and Integrity concealed information is not particular to Window Rock, because nothing else in the complaint suggests any steps Window Rock took to conceal information from plaintiffs. And the complaint does not allege scienter attributable to Window Rock as opposed to Integrity. There is no allegation that Window Rock intended to deceive plaintiffs by withholding the financial reports.[4] Plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A). Plaintiffs do not plead with particularity that Window Rock intended the Quarterly Updates to be misleading.

Plaintiffs point to Cardon's statements in the April call to suggest, at the very least, a reckless disregard of the truth for allowing misleading reports to be distributed to investors. [38] at 14. Plaintiffs must plead facts to support that an inference of scienter is "*at least as likely* as any plausible opposing inference." *Tellabs, Inc.*, 551 U.S. at 324 (emphasis in original). A complaint does not survive "if it is more likely that the errors resulted from 'careless mistakes at the management level' than

---

[4] Plaintiffs' response brief argues that "whether Window Rock instructed Integrity to provide Plaintiffs with the unaudited financials" is a factual issue. But an allegation that Window Rock acted with scienter is a requisite element of the claim. Plaintiffs can plead fraud "on information and belief" if "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides 'the grounds for his suspicions.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (citation omitted). "The grounds for the plaintiff's suspicions must make the allegations *plausible*." *Id.* at 443 (emphasis in original). Plaintiffs do not allege such facts to support an allegation of scienter based on information and belief. *See* [1] ¶ 82–89.

14

from 'an intent to deceive or a reckless indifference to whether the statements were misleading.'" *Pension Tr. Fund for Operating Engineers v. Kohl's Corp.*, 895 F.3d 933, 936–37 (7th Cir. 2018*)* (quoting *Makor*, 513 F.3d at 709). Cardon's admission that "written communications were not clearly communicating what was really going on in the fund" and "Jeff's role was to communicate this and it didn't get communicated" supports a plausible opposing inference of carelessness or negligence. The opposing inference of nonfraudulent intent is that the financial reports reflecting the accurate condition of the Fund were supposed to be distributed to plaintiffs but fell through the cracks because of Pettiford. In the absence of other allegations supporting a strong inference of scienter, the facts more likely suggest the type of "negligent oversight" or "some other breakdown lower in the corporate hierarchy" that does not rise to a "cogent and compelling" inference of scienter. *See id.* at 941; *but see Jones v. Corus Bankshares, Inc.*, 701 F.Supp.2d 1014, 1029 (N.D. Ill. 2010) ("[A] strong inference of scienter may still be credited where it is almost inconceivable that an individual defendant would be unaware of the matters at issue."). Because plaintiffs do not adequately plead scienter, the securities fraud claim under Section 10(b) and Rule 10b–5 fails.

Section 20(a) of the Exchange Act provides for liability against any person who, directly or indirectly, controls an entity or individual that violates the statute. 15 U.S.C. § 78t. To state a claim under Section 20(a), plaintiffs must allege: (1) a primary securities violation; (2) each of the individual defendants exercised general control over the operations; and (3) each of the individual defendants "possessed the power

15

or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992). Because the complaint does not state a primary securities violation, the claim for control-person liability against Patrick Cardon and Cordell Rogers is dismissed.

### C. State-Law Claims

To state a claim for common law fraud, a plaintiff must allege: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from the reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496 (1996). While common law fraud claims are not subject to the more demanding standard for showing a strong inference of scienter under the PSLRA, plaintiffs must still allege fraud with specificity under Rule 9(b). As discussed above, plaintiffs do not allege with particularity Window Rock's role in misleading investors through the Quarterly Updates as opposed to the Integrity defendants. Because it does not meet the pleading requirements, plaintiffs do not state a claim for common law fraud and defendants' motion to dismiss is granted.

To state a claim for negligent misrepresentation in Illinois, a plaintiff must allege "(1) a false statement of material fact; (2) carelessness or negligence in ascertaining truth of the statement; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; (5) damage to

the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information." *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill.2d 326, 334–35 (2006). A claim for negligent misrepresentation is similar to common law fraud, but plaintiffs face a lower bar and only need to allege carelessness or negligence. *See Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 452 (1989); *Quinn v. McGraw-Hill Companies, Inc.*, 168 F.3d 331, 335 (7th Cir. 1999) (noting that the requirement of reasonable reliance is identical for fraud and negligent misrepresentation claims); s*ee also First Midwest Bank*, 218 Ill.2d at 335 (explaining that when purely economic damages are sought, a duty exists "only if the party is in the business of supplying information for the guidance of others in their business transactions"). The heightened pleading standard under Rule 9(b) does not apply to negligent misrepresentation claims. *See Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). Defendants do not dispute that they owed a duty to plaintiffs, but they dispute that plaintiffs allege a false statement and justifiable reliance by plaintiffs. [31-1] at 15–16. Plaintiffs do not plausibly allege that the presentation was false or misleading, but they do plausibly allege that the Quarterly Updates were misleading. Plaintiffs also plausibly allege carelessness or negligence. Cardon's statement that Pettiford's "role was to communicate [the financial statements] and it didn't get communicated" plausibly suggests that Window Rock recognized its duty to communicate the financial statements to plaintiffs and its failure to do so. [1] ¶ 69. Plaintiffs allege reasonable reliance on the Quarterly Updates as material to their

17

decision to continue investing in the Fund. [1] ¶¶ 86–87. Defendants argue that plaintiffs fail to plead reliance because they "had the benefit of employing a financial assistant who had access to financial information and documents related to the Fund." [31-1] at 16. The inquiry for justifiable reliance "considers what the plaintiffs knew and what they could have learned through the exercise of ordinary prudence." *Turubchuk v. S. Illinois Asphalt Co., Inc.*, 958 F.3d 541, 552 (7th Cir. 2020). At the pleading stage, plaintiffs sufficiently allege reasonable reliance on the Quarterly Updates for their investment decisions because they did not have access to the financial reports. Whether plaintiffs' financial adviser, Hines, had access to the financial reports and whether plaintiffs therefore should have known that the Quarterly Updates were only a partial picture is a factual question resolved in favor of the plaintiffs. Because plaintiffs state a claim for negligent misrepresentation, defendants' motion to dismiss this claim is denied.

Under the Illinois Securities Act of 1953, it is unlawful to "obtain money or property through the sale of securities by means of any untrue statement of a material fact or any omission." 815 ILCS 5/12(G). The state law parallels federal securities statutes, but it does not require proof of loss causation or scienter. *See Lucas v. Downtown Greenville Inv'rs Ltd. P'ship*, 284 Ill.App.3d 37, 52 (2d Dist. 1996); *Foster v. Alex*, 213 Ill.App.3d 1001, 1005–06 (5th Dist. 1991). The state-law securities claim requires proof that the defendants: (1) made a material misstatement or omission, (2) in connection with the purchase or sale of securities, (3) upon which the plaintiffs relied. *Tirapelli v. Advanced Equities, Inc.*, 351 Ill.App.3d 450, 455 (1st Dist.

18

2004). As discussed above, plaintiffs do not adequately plead that the presentation was a false or misleading statement. Plaintiffs do sufficiently plead that the Quarterly Updates were materially false or misleading, that it was in connection with the sale of securities, and that plaintiffs relied on the Quarterly Updates in maintaining their investments in the Fund. *See* [1] ¶¶ 114—17. As with the federal securities claims and common law fraud claim, however, plaintiffs' allegations lack specificity as to Window Rock's role in the distribution of the Quarterly Updates. Plaintiffs do not need to allege scienter to state a claim under state law, but they must still meet the Rule 9(b) pleading requirements about who made the omission and how Window Rock's role in the omission amounted to fraud. Because the state securities fraud claim is not adequately alleged, defendants' motion to dismiss is granted.

Defendants do not make a substantive argument for dismissal of plaintiffs' IUDTPA claim (Count VI). Nevertheless, the IUDTPA does not provide a private cause of action for damages. *See* 815 ILCS 510/3 (authorizing "injunctive relief upon terms that the court considers reasonable"); *see, e.g.*, *CCC Info. Servs., Inc. v. Tractable, Inc.*, No. 18 CV 7246, 2023 WL 415541, at *4 (N.D. Ill. Jan. 25, 2023). Claims for injunctive relief under the IUDTPA require an allegation of ongoing or future harm. *See Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill.App.3d 1, 9 (1st Dist. 2009) ("To be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show that the defendant's conduct will likely cause it to suffer damages in the future."). Plaintiffs allege past harm

19

caused by defendants' conduct, but they do not allege ongoing or future harm. *See* [1] ¶¶ 120–24. Because plaintiffs do not state a claim upon which relief can be granted, the defendants' motion to dismiss this claim is granted.

## IV. Conclusion

Defendants' motion to dismiss for lack of personal jurisdiction, [30], is denied. Defendants' motion to dismiss for failure to state a claim, [31], is granted in part and denied in part. Plaintiffs' state-law claim for negligent misrepresentation (Count V) survives. Plaintiffs' federal securities claims (Counts I and II) and remaining state-law claims are dismissed without prejudice.[5]

ENTER:

Date: November 21, 2023

Manish S. Shah
U.S. District Judge

---

[5] Ordinarily, a plaintiff should be given at least one opportunity to amend a complaint. *See Saint Anthony Hosp. v. Eagleson*, 40 F.4th 492, 517 (7th Cir. 2022) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015)).