UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL MAGNUSON, CONSTANCE MAGNUSON, LINDA MACK, ADRIANNE SHAW, MIKE FLANIGAN, JANEAN MONROE, MICHAEL FREDRICK, JOHN RICH, BYRON SMITH, KRISTINE BREUKER, THOMAS JAMES, PAUL FAZIO, PAMELA FAZIO, MIKE FREED, and JANE FREED,

   Plaintiffs,

 v.

WINDOW ROCK RESIDENTIAL RECOVERY FUND, L.P., WINDOW ROCK CAPITAL PARTNER GP, LLC, WINDOW ROCK MANAGER, LLC, PATRICK CARDON, CORDELL ROGERS, INTEGRITY BANK & TRUST, INTEGRITY WEALTH MANAGEMENT, and ERIC DAVIS,

   Defendants.

No. 22 CV 1010

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

The fifteen plaintiffs invested in a Window Rock fund through Integrity Bank & Trust. The Fund performed poorly and by the time of its closing, plaintiffs lost $1.3 million dollars. They brought claims for securities fraud under the Securities Exchange Act of 1934 against all Window Rock defendants and for control-person liability against its officers Patrick Cardon and Cordell Rogers. They also brought state-law claims against all Window Rock defendants for violations of the Illinois Securities Law of 1953 and the Illinois Uniform Deceptive Trade Practices Act, common law fraud, and negligent misrepresentation. Plaintiffs filed an amended

complaint after I dismissed all claims (except for negligent misrepresentation). The Window Rock defendants move to dismiss the amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For reasons discussed below, the motion is granted in part and denied in part.

I.      **Legal Standards**

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (citation omitted). At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiffs' favor, disregarding legal conclusions or "[t]hreadbare recitals" supported by only "conclusory statements." *Iqbal*, 556 U.S. at 678.

Plaintiffs alleging fraud must meet heightened pleading requirements under Rule 9(b). Fed. R. Civ. P. 9(b). Plaintiffs "must state with particularity the circumstances constituting fraud or mistake." *Id.* They must describe "the who, what, when, where, and how" of the fraud, though the "requisite information as to those five questions may differ" based on the facts of a case. *See Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018). In allegations of fraud involving multiple defendants, a complaint "should inform each defendant of the nature of his alleged participation in the fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). Complaints that "lump" multiple defendants together do not satisfy the pleading requirements under Rule 9(b). *See id.*

2

**II.     Facts**

I assume familiarity with the previous order granting in part and denying in part the Window Rock defendants' motion to dismiss under Rule 12(b)(6). *See Magnuson v. Window Rock Residential Recovery Fund, L.P.*, No. 22-CV-1010, 2023 WL 8090727 (N.D. Ill. Nov. 21, 2023). In brief, plaintiffs invested in a Window Rock fund for distressed real estate assets. Plaintiffs relied in part on a promotional PowerPoint presentation showing that seven existing asset pools were performing positively with projected rates of return between 12% and 43%. Throughout the life of the Fund, Window Rock distributed Quarterly Reports showing the Fund was performing positively. But in February 2020, the Fund was closed with little notice to investors. Window Rock and Integrity officers reported in an April 2020 call with plaintiffs' financial advisor, Thomas Hines, that the Fund performed poorly. Window Rock's Managing Director, Patrick Cardon, admitted that financial conditions had not been properly communicated by Window Rock's Jeff Pettiford. Plaintiffs lost nearly two-thirds of their investments and brought this suit for securities fraud.

After the first dismissal, plaintiffs amended their complaint to include additional allegations about defendants' promotional PowerPoint presentation, distribution of the Quarterly Updates, quarterly meetings between Jeff Pettiford and Hines, and statements made by Patrick Cardon during the April 2020 meeting. *See* [50] ¶¶ 3–4, 51, 56–64, 68, 81–84.[1] The Integrity defendants answered the amended

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' amended complaint, [50].

3

complaint, [55], and the Window Rock defendants again move to dismiss the amended complaint, [54].

**III.　Analysis**

    **A.　Federal Securities Claims**

Plaintiffs bring a claim under Section 10(b) of the Exchange Act and SEC Rule 10b-5 against all Window Rock defendants. They also bring a claim under Section 20(a) for control-person liability against Window Rock's Managing Director, Patrick Cardon, and its Chief Financial Officer, Cordell Rogers.

Section 10(b) of the Exchange Act prohibits (1) the use or employment of any deceptive device; (2) in connection with the purchase or sale of any security; and (3) in contravention of Securities and Exchange Commission rules and regulations. 15 U.S.C. § 78j(b). SEC Rule 10b-5 implements this statute and prohibits the making of any "untrue statement of a material fact" or the omission of any "material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5.

To state a claim under Section 10(b), a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrix Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011). An omission is material when there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the total mix of

4

information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (quotation omitted).

Scienter is a "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007). Private plaintiffs bringing Section 10(b) and Rule 10b–5 claims must meet the heightened pleading standard under both Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act. *See Walleye Trading LLC v. AbbVie Inc.*, 962 F.3d 975, 977 (7th Cir. 2020). Under the PSLRA, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2)(A). A complaint survives only if "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324. Plaintiffs "must plead facts rendering an inference of scienter at least as likely as any plausible opposing inference." *Id.* at 328. They must show that defendants "either knew their statement was false or were reckless in disregarding a substantial risk that it was false." *Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 704 (7th Cir. 2008). There is no judicial presumption that "statements in group-published documents are attributable to officers who have daily involvement in company operations." *Pugh v. Trib. Co.*, 521 F.3d 686, 693 (7th Cir. 2008). Plaintiffs must create a strong inference of scienter as to each individual defendant. *Id.*

5

Plaintiffs allege two representations as the basis for their fraud claims: the PowerPoint presentation used to promote the Fund and the Quarterly Updates created by Window Rock and distributed by Integrity during the investment period.

*1.     Promotional PowerPoint Presentation*

Plaintiffs argue that the PowerPoint presentation they relied on before investing in the Fund misrepresented the actual performance of the existing seven asset pools and induced them to invest in the Fund. [50] ¶¶ 53, 56–63; [56] at 4–9. Plaintiffs clarify that they are no longer challenging the forward-looking statements in the presentation (i.e., projections of positive rates of return), but they say that the representations about the performance of the existing asset pools (i.e., realized internal rates of return, portfolio values) were false at the time of presentation in 2014. [56] at 5, 8.

While forward-looking looking statements in the PowerPoint are not actionable, representations about current performance figures—even if used in the context of promotional materials—are actionable if they are false or misleading. *See Tellabs II*, 513 F.3d at 705 ("[A] mixed present/future statement is not entitled to the safe harbor with respect to the part of the statement that refers to the present."); *see also W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F.Supp.3d 622, 655 (N.D. Ill. 2020) (defendants may not "insulate representations of present fact just by commingling them with future predictions"). Plaintiffs amend their complaint to assert that the only way the seven asset pools could have performed so poorly (as revealed during the April 2020 call) is if there had been a "catastrophic

6

collapse" of the asset classes. [56] at 6. Because there were no catastrophic developments in the real estate market between June 2014 and February 2020 that could account for the poor performance of the asset pools, plaintiffs say Window Rock must have misstated the state of the asset pools in 2014. *Id.*; [50] ¶ 61. But this is the type of "must be" fraud argument that skirts Rule 9(b)'s requirements. *See DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) ("Because only a fraction of financial deteriorations reflects fraud, plaintiffs may not proffer the different financial statements and rest. Investors must point to some facts suggesting that the difference is attributable to fraud."); *see also Arazie v. Mullane*, 2 F.3d 1456, 1467 (7th Cir. 1993) ("[T]emporal proximity between positive statements stressing a firm's strengths and announcements of poor economic performance do not create an inference that the earlier statements were fraudulent."). Six years between the promotion of the Fund to its closing is a long time, and forces other than fraud could explain the poor performances of the asset pools.

Plaintiffs say that it is reasonable to conclude Window Rock used the same reporting and accounting methods and procedures for all eight asset pools, so I should extrapolate Window Rock's consistent overstatement of the Fund to the other seven asset pools. [56] at 8. This is a different flavor of the same argument plaintiffs already presented, and it remains insufficient. Pointing to "highly suspect" accounting and reporting practices of the Fund to allege that Window Rock must have also been concealing poor financial performance of its other asset pools is conclusory. Plaintiffs must plead particular facts as to the seven asset pools—it cannot rely on allegations

7

about Window Rock's knowledge and concealment of the Fund's performance. Plaintiffs do not sufficiently allege that the promotional PowerPoint contained false or misleading representations about the existing seven asset pools at the time of the presentation.

### 2. *Quarterly Updates*

Plaintiffs maintain that the Quarterly Updates generated by Window Rock and distributed to plaintiffs via Integrity were false and misleading because they presented a rosy picture of the Fund's financial condition, which was in fact "cratering." [50] ¶¶ 64–65. In ruling on the motion to dismiss the first complaint, I noted that the measures of positive performance reported in the Quarterly Updates did not appear to compare the same information as measures reported in the financial reports but accepted as true that the Quarterly Updates contradicted information in other financial reports (custodian statements, audited income statements, and balance sheets) that plaintiffs did not have access to during the investment period. *Magnuson*, 2023 WL 8090727, at *5. But plaintiffs failed to plead Window Rock's role in the alleged fraud and scienter with particularity because Window Rock's misrepresentation theory rested on the Quarterly Updates, which were distributed to plaintiffs by Integrity. *Id.* at *6. While Managing Director Cardon's statements at the April call amounted to an admission of negligence by Jeff Pettiford in communicating financial information to investors, I found that, in the absence of other allegations supporting an intent to deceive particular to Window Rock, plaintiffs did not plead facts supporting a strong inference of scienter through the

8

Quarterly Reports. *Id.* Plaintiffs amend their complaint to include additional details about Window Rock's role in the fraud and scienter separate from Integrity. They also clarify that their theory of liability is not one of omission but of affirmative misrepresentation. [56] at 11. They say that Window Rock knew that the information in the Quarterly Updates was false at the time they were being circulated and withheld that information to keep investors in the dark about the Fund's true financial condition. *Id.*

Plaintiffs also allege that Window Rock partner Jeff Pettiford held quarterly meetings with Hines to review Quarterly Updates. [50] ¶ 64. During these meetings, Pettiford continued to affirmatively represent that the Fund was performing positively each quarter. *Id.* ¶¶ 65, 68. Pettiford's most recent meeting to review an update was in April 2019 when he represented that the Fund's returns to date were such that eventual final returns would range from 6% to 9%.[2] *Id.* ¶¶ 66, 81. Plaintiffs also allege additional facts about the April 2020 conference call. During the call, Cardon asserted that Window Rock had communicated to its clients, beginning in 2018 and throughout 2019, that the Fund was performing poorly and was going to lose money. *Id.* ¶ 83. Cardon claimed that when he reported the true condition of the Fund to clients during 2018 and 2019 (presumably through the full picture contained

---

[2] Defendants argue that Pettiford's meetings with Hines still constitute future predictions that are entitled to a safe harbor. Pettiford's statement is a mixed statement of present and future. The prediction that eventual final returns would be in the 6% to 9% range is a future prediction that is nonactionable, but the part of the statement representing current returns to date is not forward-looking. *See, e.g.*, *In re Akorn, Inc. Sec. Litig.*, 240 F.Supp.3d 802, 817 (N.D. Ill. 2017) (statements that company's integration efforts were "on track" conveyed both a forward-looking belief and the current state that made the prediction reasonably likely).

9

in the financial reports), clients requested that Window Rock continue to report performance "in the same manner it had done to date." *Id.* ¶ 84. Plaintiffs say nobody made such a request about the financial reporting. *Id.*

Plaintiffs' amended complaint adequately distinguishes Window Rock's knowledge and intent from Integrity's.[3] The new allegations, accepted as true, establish Window Rock's knowledge that the Fund was performing poorly as early as 2018, which contradicts Window Rock's continued, affirmative representations in Quarterly Updates (and the quarterly meetings with Pettiford) that the Fund was performing positively. Cardon's admission shows that Window Rock—not Integrity— knew the Quarterly Updates were misleading about the Fund's financial condition but nevertheless continued to report performance through Quarterly Updates without providing the full scope of financial information to investors. Plaintiffs' allegations no longer rest on Window Rock acting or failing to act through Integrity. And Cardon's statements at the April call pushes the inference from mere carelessness over the compelling-inference threshold. *See Tellabs*, 551 U.S. at 323– 24. The inference of non-fraudulent intent that the financial reports simply fell through the cracks in the chain of communication is less likely when weighed against Pettiford's quarterly meetings with Hines where he continued to affirm the ongoing

---

[3] Defendants argue that plaintiffs fail to allege with specificity as to each Window Rock entity (the Fund itself, Window Rock Capital Partner GP, or Window Rock Manager, LLC). [54] at 11. Plaintiffs attribute statements about the performance of the Fund to the Window Rock corporate entities collectively. [50] ¶ 1, [56] at 13–14. Plaintiffs, through their collective allegations, are taking on the burden to prove that all three Window Rock defendants are responsible for the fraud, and since each entity's role in the Fund is described in the private placement memoranda, each defendant is sufficiently on notice as to plaintiffs' theory of attribution.

10

representations of financial health in the Quarterly Reports. Plaintiffs' assertion that Cardon lied about Window Rock reporting the Fund's poor performance to clients beginning in 2018 (and that he stopped reporting these figures at the bequest of clients), [50] ¶ 84, strengthens the inference of scienter. The knowledge that the Quarterly Reports were incomplete, the understanding that investors might want to know the full financial picture, and the purposeful withholding of that information makes the inference of scienter more likely than one of simple negligence. Taken together, these allegations raise a cogent and compelling inference of scienter as to Window Rock.

While the amended complaint adequately alleges Window Rock's scienter apart from the Integrity defendants, it does not plead CFO Cordell Roger's scienter with particularity. Cardon's statements at the April call establish that he had personal knowledge and responsibility over the Quarterly Reports (at least from 2018 to 2019), which supports an inference of individual scienter and Window Rock's corporate scienter. *See Tellabs II*, 513 F.3d at 708 (corporate scienter generally requires alleging an individual defendant or corporate agent acted with scienter). But there are no similar allegations as to Cordell Rogers. Rogers was present at the April call when the Fund closed, but plaintiffs don't allege Rogers made any statements that suggest he was involved in the distribution of Quarterly Updates and concealment of financial reports during the investment period. Plaintiffs say that it is reasonable to infer Rogers's scienter because he: (1) served as Window Rock's CFO; (2) knew the accuracy of the written financial information used to promote and report

11

on the Fund; and (3) authorized its use. [56] at 14. But the inference of his knowledge and complicity in the Quarterly Reports is based on only his role as CFO. An individual defendant's high-ranking position within a company is generally insufficient to support a strong inference of scienter. *Jones v. Corus Bankshares, Inc.*, 701 F.Supp.2d 1014, 1029 (N.D. Ill. 2010); *see also Pugh*, 521 F.3d at 697 (insufficient pleading of individual officer's scienter where complaint alleged an individual defendant's participation in fraudulent scheme but no role in preparing or disseminating company's financial statements or press releases). Plaintiffs must identify what statements are attributable to Rogers, or if they cannot identify specific statements, they must allege facts linking Rogers to the Quarterly Reports and concealment of information. *See In re Sears, Roebuck & Co. Sec. Litig.*, 291 F.Supp.2d 722, 727 (N.D. Ill. 2003) (plaintiffs' allegations about company officers' knowledge of core operations were "backed up by the statements in the complaint about the numerous statements made by various defendants about the credit portfolio and about its effect on [company] profits"). That link is missing from the amended complaint.

In sum, plaintiffs state a claim for federal securities fraud against Window Rock and Patrick Cardon but not Cordell Rogers. Statements made in the promotional presentation are not actionable, so the claim is limited to the statements made during the investment period.

Section 20(a) of the Exchange Act provides for liability against any person who, directly or indirectly, controls an entity or individual that violates the statute. 15

U.S.C. § 78t. To state a claim under Section 20(a), plaintiffs must allege: (1) a primary securities violation; (2) each of the individual defendants exercised general control over the operations; and (3) each of the individual defendants "possessed the power or ability to control the specific transaction or activity upon which the primary violation was predicated, whether or not that power was exercised." *Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992). Plaintiffs sufficiently allege that Cardon and Rogers each exercised general control of Window Rock's operations as Managing Director and CFO, respectively. But they must allege that each also had the power to control the specific activity at issue here—the distribution of the Quarterly Updates. The claim is sufficiently alleged as to Cardon, who admitted involvement in distribution of performance figures at the April call. But plaintiffs do not allege facts about Rogers's specific control beyond the scope of his duties as CFO. While the heightened pleading standard for primary violations does not apply here, plaintiffs must allege something more than Rogers's position as CFO to state a claim for control-person liability under Section 20(a). *See Shah v. Zimmer Biomet Holdings, Inc.*, 348 F.Supp.3d 821, 850 (N.D. Ind. 2018) ("It is not enough to merely allege that an individual controlled the acts of a company by virtue of his or her position."). Plaintiffs need not attribute specific fraudulent statements to Rogers, but allegations about Rogers's specific control over the Quarterly Updates are missing here.

### B. State-Law Claims

Under the Illinois Securities Act of 1953, it is unlawful to "obtain money or property through the sale of securities by means of any untrue statement of a

13

material fact or any omission." 815 ILCS 5/12(G). The state law parallels federal securities statutes, but it does not require proof of loss causation or scienter. *See Lucas v. Downtown Greenville Inv'rs Ltd. P'ship*, 284 Ill.App.3d 37, 52 (2d Dist. 1996); *Foster v. Alex*, 213 Ill.App.3d 1001, 1005–06 (5th Dist. 1991). It requires proof that the defendants: (1) made a material misstatement or omission, (2) in connection with the purchase or sale of securities, (3) upon which the plaintiffs relied. *Tirapelli v. Advanced Equities, Inc.*, 351 Ill.App.3d 450, 455 (1st Dist. 2004). Illinois courts rely on federal securities law to interpret securities claims brought under state law, *see* 815 ILCS 5/12, so the federal and state claims rise and fall together. *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 660 (7th Cir. 2024), *reh'g denied*, No. 23-3200, 2024 WL 4257157 (7th Cir. Sept. 20, 2024). Because plaintiffs state a claim for federal securities fraud, the claim under the Illinois Securities Act survives.

To state a claim for common law fraud, a plaintiff must allege: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from the reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 496 (1996). Plaintiffs meet the heightened pleading requirements for securities fraud under the PSLRA, so they also state a claim for common law fraud. *See ABN AMRO, Inc. v. Cap. Int'l Ltd.*, 595 F.Supp.2d 805, 848 (N.D. Ill. 2008).

The Illinois Uniform Deceptive Trade Practices Act does not authorize damages, but plaintiffs amend their complaint to specify that they are only seeking

14

attorneys' fees. [50] ¶ 140; *see* 815 ILCS 510/3 (authorizing injunctive relief and attorneys' fees for willful violations). Illinois courts treat likelihood of future harm as an element of a cause of action under the Act. *See Popp v. Cash Station, Inc.*, 244 Ill.App.3d 87, 98–99 (1st Dist. 1992) (noting the purpose of the Act to "enjoin[] trade practices which confuse or deceive the consumer" and a consumer "must allege facts which would indicate that [they] are likely to be damaged in the future") (internal quotation marks omitted). The statute permits recovery for attorneys' fees if a defendant's violation was willful. But that requires a violation in the first instance. *See Vara v. Polatsek*, 2012 IL App (1st) 112504-U, ¶ 82 (finding plaintiff could not receive attorneys' fees and costs under the Act without obtaining injunctive relief). Because plaintiffs do not have a claim for injunctive relief, they may not recover for attorneys' fees. Plaintiffs' claim under the Act is dismissed.

## IV. Conclusion

Defendants' motion to dismiss the amended complaint, [54], is granted in part and denied in part. The federal securities fraud claim survives in part. The control-person liability claim remains against Patrick Cardon but is dismissed as to Cordell Rogers. The state-law claims for securities fraud, common law fraud, and negligent

15

misrepresentation also survive. The claim under the Illinois Uniform Deceptive Trade Practices Act is dismissed.[4]

ENTER:

Date:  December 9, 2024

Manish S. Shah
U.S. District Judge

---

[4] Dismissal with prejudice is appropriate if a plaintiff was given the opportunity to amend, failed to cure a deficiency, and any further amendment would be futile. *See Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007). Plaintiffs have had one chance to amend and put their best foot forward on defendant Rogers' liability. Amendment would be futile, and so too for plaintiffs' attempt to seek attorney's fees under 815 ILCS 510/3. The dismissals are with prejudice.